UNITED STATES, to Use of HEISE, BRUNS & CO., v. AMERICAN BONDING & TRUST CO. OF BALTIMORE CITY.

(Circuit Court, D. Maryland. February 2, 1898.)

1. BOND OF CONTRACTOR—PROCUREMENT BY MISREPRESENTATION— RIGHTS OF MATERIAL MAN.

A company proposing to act as surety on the bond of a government contractor asked a firm whether they knew of any outstanding liabilities on the part of the contractor, to which the firm replied in the negative, though the contractor at the time owed money to the firm. It was partly owing to this reply that the company signed the bond. The firm thereafter supplied the contractor with materials for the work, in reliance on the security furnished by the bond, which was conditioned on full payment of work and materials. Payments were made by the contractor to the firm, nearly sufficient in amount to cover the cost of these materials, but they were applied on the pre-existing debt. Held, that the firm could not recover on the bond.

2. SAME.

It is immaterial that the inquiry made of the firm was accompanied by a statement that the reply would be held strictly private and confidential, and as not making the firm in any way responsible.

3. SAME—RELEASE OF SURETY—EXTENSION OF TIME.

A material man cannot recover on a government contractor's bond conditioned that the contractor shall make full payment to all persons supplying materials, if he has extended the time of payment by taking notes due after the termination of the contract, as it deprives the surety of the opportunity of compelling appropriation of the payments as made for claims for materials.

Tried before the court without a jury.

Fielder C. Slingluff and Wm. T. Donaldson, for complainants.

Cowen, Cross & Bond, John L. J. Lee, and R. B. Tippett, for defendant.

MORRIS, District Judge. This is a suit by Heise, Bruns & Co. against the American Bonding & Trust Company, as surety for Minor & Bro. Minor & Bro., on June 12, 1895, contracted with the United States to erect a hospital building at Ft. Myer, Va., for the sum of $18,200, and gave a bond, dated June 13, 1895, in the penalty of $6,500, with the American Banking & Trust Company (now the American Bonding & Trust Company of Baltimore City), as surety, for the performance of the contract, and conditioned also that the contractors would "make full payments to all persons supplying them labor or materials in the prosecution of the work provided for in said contract." This clause was inserted in accordance with the provision of the act of congress approved August 13, 1894. Minor & Bro. performed their contract with the United States, and received payment in full;

but they owe Heise, Bruns & Co. $2,474.51 for the materials furnished, having paid nothing on that account. Several defenses to this action have been interposed. It appears in evidence that, prior to the giving of the bond sued on in this case, Minor & Bro. made application, April 9, 1895, to the defendant company, to become surety for them to the extent of $35,000 on the preliminary bond required of bidders for government contract work. The terms of the preliminary bond are that, in case the contract is awarded to the bidder, the surety will sign the required bond for the performance of the contract. Before agreeing to become surety on the preliminary bond, with the obligation to sign the final bond, the defendant company made inquiries as to the business standing of Minor & Bro., by sending printed questions to the persons to whom Minor & Bro. referred the company, and, among others, to the plaintiffs, Heise, Bruns & Co., themselves. The plaintiffs made favorable answers to the questions; and to question No. 13,—"Are you aware of his [meaning Minor & Bro.] being at present under any debts or liabilities whatever?" the answer was, "I do not;" and to question No. 14, "Has he been prompt in paying ordinary debts?" they answered, "Yes." This paper was dated April 6, 1895, and the fact was that on that date Minor & Bro. owed Heise, Bruns & Co. $3,196.78, of which $2,886 was represented by four unmatured promissory notes, and $310.78 was a balance on open account. The notes then running were in great part renewals of previous notes, given in January, 1895. The testimony of the president of the defendant company shows that these answers of Heise, Bruns & Co. influenced the officers of the company in assuming the suretyship, and that a full disclosure of the facts would have led, at least, to a fuller investigation of the circumstances of the indebtedness, with the result, probably, that the company would have declined the risk. The testimony of the plaintiffs tends to show that, in supplying the materials for which this suit is brought, the plaintiffs relied, not upon the commercial credit of Minor & Bro., but upon this bond. Mr. Shelley, the plaintiffs' agent, who made the transaction, testified that he submitted an estimate for supplying certain material for the hospital building, amounting to $1,985.37, and, when Mr. Minor accepted his prices, he asked him in reference to payment, and Minor said it would be all right, that the American Bonding & Trust Company was on his bond to pay all bills, and there would be nothing to fear; and then witness said, " 'Under those considerations, I will take it;' * * * and the understanding was, if he got money, he would pay us money on account of this building."

Minor & Bro. performed their contract with the government, and received the contract price, the final payment being June 15, 1896; and on July 24, 1896, being insolvent, Minor & Bro. made a deed of assignment. They owed at that date to Heise, Bruns & Co., in all, a balance of $3,517.48, for materials furnished for several different buildings, of which $2,474.51 was for the materials furnished for the hospital building, being the mill work mentioned in the original estimate, and other special work. It appears, therefore, that although the materials were supplied from July, 1895, to May, 1896, and payments were made by the government to Minor & Bro. from month to

month, nothing was paid to the plaintiffs on account of these materials, except $185; and the whole indebtedness was carried along in promissory notes, renewed from time to time, the last renewal not falling due until after the date of the deed of trust, July 24, 1896. It would further appear, from the books of Heise, Bruns & Co., that although they sold building materials to Minor & Bro., besides the materials for the government work, from April, 1895, to July, 1896, amounting to over $5,600, and during that time Minor & Bro. paid to Heise, Bruns & Co. the debt of $3,196.78, which was outstanding on April 5, 1895, the total amount due at the time of the failure was only $3,415.78, including the material for government work amounting to $2,474.51; so that there must have been paid in cash during the running of these transactions over $6,500, none of which was applied to the material for the government work, and which payments, if it had not been for the original debt of $3,196.78, outstanding when the bond for the government work was signed, would have left but about $1,000 due to Heise, Bruns & Co. at the date of the failure of Minor & Bro. This shows that the failure of Heise, Bruns & Co. to state the fact that there was this considerable debt to them outstanding in June, 1895, was a very material fact which has prejudiced the surety.

In Blest v. Brown, 3 Giff. 450, it was held by Vice Chancellor Stuart that a surety who executes a bond on a misrepresentation by the obligee of a material fact is entitled to relief; and in that case, because the plaintiff was induced to execute a bond on a representation by the obligee that the principal was not indebted to him, which statement was untrue, the court directed the bond to be canceled. See, also, Graves v. Bank, 10 Bush, 23–29; 1 Story, Eq. Jur. § 215; 2 Pom. Eq. Jur. § 907.

It is claimed by Mr. Heise, who wrote the answer to question 13, that he supposed the question referred to debts of any considerable amounts to other persons, which Minor & Bro. were not able to pay in the regular course of business. But, considering the high degree of candor which is required of a party who is to profit by the liability about to be assumed by a surety, this explanation is not sufficient.

It is also claimed that the statement on the printed questions to which answers were requested, that "your replies hereto will be held strictly private and confidential, and as not making you in any way responsible," prevents the defendant company from using them to defeat a recovery on the bond. But this stipulation, obviously, is not applicable to a case where the party replying attempts to sue on the bond, and profit by it. In this case the materials supplied were sold on the faith of the bond, and the case, in its circumstances and result, is just as if Heise, Bruns & Co. had been the named obligees in the bond. The answer to the thirteenth question was not matter of opinion, but a misstatement of a material fact, of which the party answering had knowledge, and the existence of which, if disclosed, was well calculated to influence the defendant to decline to go upon the bond, or to see to it that the money paid by the government to the contractor was applied to the payment of the debts for the materials, for the payment of which the company

became liable as surety. I think that the defendant's fourth prayer, as I have amended it, must be granted.

It is also contended that the defendant is released because of the dealings between Heise, Bruns & Co. and Minor & Bro., by which the time for the payment of the materials was extended beyond the time when the work was finished, and the government had paid for it. This is a bond of a rather unusual character, involving the surety in a possible liability to persons of whom it may have no knowledge. It is conceded in this case that the defendant had no knowledge that the plaintiffs were furnishing materials until after Minor & Bro. had made the deed of trust of July 24, 1896, the final payment having been made by the government June 15, 1896.

The promissory notes outstanding were as follows:

```
$  800, dated June 25, 1896, at 60 days.
   700,       "    "    "      30 days.
   100,       April  7, 1896,   4 months.
   400,       July  10, 1896,   4 months.
   400,       June  16, 1896,   4 months.
   330,       June  10, 1896,   3 months.
   300,       May   22, 1896,  60 days.
```

$3,430.
$310.45, open account.

The last items of material were furnished May 14, 1896; the last payment by the government, June 15, 1896; and the promissory notes all matured after the latter part of July.

It is urged that there was no extension of time, because the terms of the original sales are testified to have been indefinite, viz. that, according to usage, Minor & Bro. were to pay as they had money on hand, and were to give notes on account for the accommodation of the plaintiffs as called for. It is true that it would appear from plaintiffs' testimony that there never were any settled terms of payment. The expectation is claimed to have been that, as the materials were delivered, Minor & Bro. would pay cash if they had it, and, if not, would give notes, and, when all the material was delivered, would settle the account, either with cash or note, as should be then agreed upon; and it is claimed that there was no extension of the time of payment, for the reason that the original terms of payment contemplated the giving of notes. Mr. Shelley, who made the sale, testified that his understanding was that Minor & Bro. would pay as they received money on account of the building. It would seem that there must be a reasonable limit put to the credit which the material man may give to the contractors without losing his right to look to the surety. If the surety is kept in ignorance he is greatly damnified by a long credit extending beyond the time of payment by the government. An important protection which the surety has is to intercept the payment about to be made by the government. Under the United States statute, the contractor cannot make a valid assignment of the money coming to him from the government; and notice by the surety that the material men are not being paid by the contractor leads to the appropriation of the government payments to that purpose. But this could not be availed of if the

money was not then due by the contractors to the material man, and its payment had been postponed by accepting notes. In this present case, the money derived from the government payments to the contractors was, in fact, partly paid over by the contractors to the plaintiffs; but it was used to pay up the outstanding notes for indebtedness previously contracted. The law of suretyship forbids that there shall be such dealing between the debtor and creditor, of which the surety is kept in ignorance, as shall put the surety in a situation of peril. Looking to the opportunity for protecting himself which the surety has if the debt for the materials is due when the final payment is made by the government, it seems but reasonable that, if the material man designedly extends the payment beyond that time, he should be held to have released the surety, and to have elected to look solely to the debtor.

The circumstances of this case are different from those of a continuing guaranty of sales to be made on customary commercial credits. This bond has reference to one specific contract, and the condition of the bond was that Minor & Bro. should make full payments to all persons supplying them materials in the prosecution of the work provided for in that contract. This, it seems to me, precludes the idea of the surety being bound for materials, the debt for which the creditor has voluntarily postponed beyond the termination of the contract. The fact that no limit of time is found in the bond, or in the act of congress authorizing the bonds, tends, I think, to show that only cash transactions were contemplated; and it would seem from the testimony that the sale of materials was not, in fact, made upon credit, but was to be paid for as the contractor received the money. I think that the defendant's prayer should be granted to the effect that the taking of promissory notes extending the time of payment beyond the time of the completion of the contract and the payment by the government prevents the plaintiffs from recovering on the bond.

Verdict for the defendant.

Affirmed in circuit court of appeals, Fourth circuit, November 1, 1898. Infra.