(Decided 13th January, 1882.)

LEVI RUST, and MARGARET RUST and D. H. EMORY,.
Administrators of GLENALVAN RUST *vs.* JULIAN J.
CHISOLM, and .others.

*Leases and Advance Mortgages—Partnership Assets under a*
*Lease—Mechanics' Lien Claims—Usury—Mode of Stating*
*an Auditor's Account.*

On the 3rd May, 1878, C. agreed to lease to L. R. and G. R., co-part-
ners, trading as R. & Son, eight lots of ground upon which the
lessees agreed to build eight houses. To aid them in the erec-
tion of the houses, C. was to advance a certain sum on each house,
and upon their completion, he was to convey to them in fee, a lot
of ground in the rear of said houses. On the 8th May, C. accord-
ingly executed a lease for ninety-nine years, renewable forever, to
L. R. and G. R., their personal representatives and assigns; on the
same day the lessees mortgaged the lots to C. to secure the pay-
ment of the advances. After the houses were partially built, the
lessees applied to C. for an additional advance, and an extension of
the time within which they were to be finished. C. agreed to
advance a further sum on each house, and to extend the time of

Rust, *et al.*, Adm'rs *vs.* Chisolm, *et al.*

heir completion till the 1st May, 1879. To secure the payment of he additional advance, the lessees executed a second mortgage by which possession of the lots was delivered to C., the lessees reserving the right to enter for the purpose of completing the houses; and to redeem any one or more of them, by the payment of the amount due thereon under the second mortgage; and upon the payment of the interest due on the first mortgage, and all arrears of ground rents, assessments, taxes and liens of every kind, due or chargeable on all the eight houses and lots. The lessees also, in consideration of the additional advances thus to be made by C., and the extension of the time within which the houses were to be finished, by deed, dated the 14th November, 1878, (in which deed the lessees referred to the lease of the 8th May, as having been executed in pursuance of the contract of the 3rd May,) relinquished all right and interest in the rear lot. Shortly after the execution of the second mortgage, G. R. died, and the work upon the houses, was after his death prosecuted by L. R., the surviving partner. On the 24th April, 1879, a bill was filed by G. R's administrators against L. R. for a sale of the houses, and C. was made a party. By consent of parties in interest, the houses were sold at public auction by trustees appointed by the Court, and C. became the purchaser. On exceptions by the appellants to the auditor's account, ratified by the Court below, allowing C's claim for advances made under the two mortgages; and allowing mechanics' and other lien claims; and to the refusal of the Court below to allow appellants' claim for usury; and to the mode of stating the account, it was HELD:

1st. That under the lease of the 8th of May, the leasehold interest in the lots on which the houses were built, was in L. R. and G. R. as co-partners, and not as tenants in common.

2nd. That on the death of G. R., L. R., the surviving partner, had a right to finish the houses, and to charge G. R's interest with its proportion of the expenditures incident thereto, and consequently the advances made by C., both before and after the death of G. R., were properly allowed.

3rd. That, under these proceedings and the agreement, C. being entitled to make the same claim against the proceeds of sale, as he could have made under a bill to redeem, amounts paid by him on account of arrears of ground rent, taxes and water rent, were properly allowed, and so were also the several mechanics' lien claims which conformed to the requirements of the statute; except two, which, as they claimed payment out of the particular fund con-

stituting part of the partnership assets, on the ground that the claims were charges or liens, upon the fund itself were defective, because it did not appear from the face of the accounts, nor from any paper accompanying the same, at what time or times the materials were furnished; but that when such claims shall have been amended as permitted by Art. 67, sec. 41, of the Revised Code, they should be allowed.

4th. That the appellants' claim for usury was properly disallowed, as the consideration for the surrender of the rear lot was a good consideration, and in no sense usurious.

5th. That no injury was done to the exceptants, from the fact that the auditor aggregated the proceeds of sale of the eight houses, and also aggregated the mortgage claims and liens; as in this case, whether the proceeds of sale were treated in the aggregate or distributively, was a matter of no consequence to the appellants, the mortgage debt, claims, liens and taxes exceeding the entire proceeds of sale.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ROBINSON, and IRVING, J., by agreement of counsel, and the decision was participated in by MILLER and ALVEY, J.

*Albert Ritchie,* for the appellants.

*J. B. Allston* and *D. G. McIntosh,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

On the 3rd of May, 1878, Chisolm, the appellee, agreed to lease to Levi and Glenalvan Rust, *co-partners, trading as Rust & Son,* eight lots of ground, upon which the lessees agreed to build eight dwelling houses. To aid them in the erection of the houses, the appellee was to advance eighteen hundred dollars *on each house,* and upon their completion,

Rust, *et al.*, Adm'rs *vs.* Chisolm, *et al.*

and not before, he was to convey to them in fee, a lot of ground in the rear of said houses.

In pursuance of this agreement, the appellee, on the 8th of May executed a formal lease of the lots to Levi and Glenalvan Rust for ninety-nine years, renewable forever; and on the same day the lessees mortgaged the lots to the appellee to secure the payment of the advances to be made by him.

After the houses were partially built, the lessees found themselves unable to finish them; and they applied to the lessor for an additional advance of money, and for an extension of the time within which they were to be finished. Upon this application the appellee agreed to advance the further sum of six hundred and fifty-three dollars and thirty-five cents on each house, and to extend the time of their completion to May 1st, 1879. To secure the payment of this additional advance, the lessees executed a second mortgage, by the terms of which, possession of the lots was delivered to the appellee, the lessees reserving the right to enter, for the purpose of completing the houses, and the right to redeem any one or more of them, by the payment of the amount due thereon under the second mortgage, and upon the payment of the interest due on the first mortgage, and all arrears of ground rents, assessments, taxes and liens 'of every kind due or chargeable on all the eight houses and lots.

The lessees also in consideration of the additional advances thus to be made by the appellee, and the extension of the time within which the houses were to be finished, by deed dated November 14th, 1878, relinquished all right and interest to the rear lot, which was to be conveyed to them upon the completion of the houses.

Shortly after the execution of the second mortgage, Glenalvan, the son died, and the work upon the houses was after his death, prosecuted by Levi, the surviving partner.

On the 24th April, 1879, just one week before the houses were to be finished under the extension of time granted by the appellee, a bill was filed by the administrators of Glenalvan against Levi Rust, for a sale of the houses; and by a supplemental bill subsequently filed, the appellee was also made a party.

Afterwards, by the consent of all parties in interest, the eight houses were sold at public auction, by trustees appointed by the Court, and at the sale thus made, the appellee became the purchaser of all the eight houses, at prices ranging from $2900 to $3700 for each of said houses, the aggregate sales amounting to $24,600.

This appeal is from the order of the Court below, ratifying the auditor's account, and overruling exceptions to the allowance of the appellee's claim, for advances made under the two mortgages,—to the allowance of mechanics' and other lien claims—to the refusal to allow appellants' claim for usury, and to the mode of stating the account.

In support of these exceptions, it is insisted in the first place, that under the lease of May 8th, the lots upon which the houses were built, belonged to Levi and Glenalvan Rust, as *tenants in common;* and secondly, conceding they belonged to them as *partners*, and *not as tenants in common*, the partnership was dissolved by the death of Glenalvan, and his interest was not therefore chargeable with advances subsequently made by the appellee, under the first and second mortgages, nor for materials subsequently used in finishing the houses.

The first contention rests upon the terms of the lease of May 8th, by which it appears that the eight lots were leased to Levi and Glenalvan Rust, *their personal representatives and assigns.* No reference whatever is made in the lease to a partnership between them, and if the question depended solely upon the terms of the lease itself, there might be some ground for the contention. But when the lease is construed in connection with the

original agreement of May 3rd, in pursuance of which it was executed, and the deed of November 14th, subsequently executed by Levi and Glenalvan, there can be but little difficulty in determining the nature and character of the interest of the lessees in the property in question. By the original contract of May 3rd, just five days before the execution of the lease, the appellee expressly agrees to lease the eight lots to " *Levi & Glenalvan Rust, co-partners, trading as Levi Rust & Son ;* " and in the deed of November 14th, subsequently executed, the lessees refer to the lease of May 8th, as having been executed in pursuance of the contract of May 3rd. In addition to this, we have the uncontradicted declarations of both Levi and Glenalvan, made to parties furnishing the materials, that the lots belonged to and were being improved by them as partners.

The second contention is equally untenable. The death of Glenalvan, no doubt operated as a dissolution of the partnership, and the surviving partner had no power to charge his interest with a new contract or new undertaking. This, however, did not prevent the surviving partner from completing a contract made and in part executed in the life-time of Glenalvan. They had agreed not only to build the houses, but upon the faith of this agreement the appellee had advanced large sums of money to aid them in completing the same. Under such circumstances Levi, the surviving partner, had the right unquestionably to finish the houses, and to charge Glenalvan's interest with its proportion of the expenditures incident thereto. If this be so, then the several sums of money advanced by the appellee under the two mortgages, both before and subsequent to the death of Glenalvan were properly allowed.

In considering the exceptions filed to the other items allowed by the auditor, we must bear in mind that the appellee was in possession of the property under the

second mortgage, and that the lessees had the right to redeem any one or more of them, only upon payment of the amount due thereon under the second mortgage, and upon payment of the interest due on first mortgage, and all assessments, liens, taxes and charges of every kind whatever due or chargeable to all of the said eight houses and lots.

Under the proceedings and agreement by which the interest of all parties in the property was sold, the appellee is entitled to make the same claim against the proceeds of sale, as he could have made under a bill to redeem. If this be so, then the amounts paid by him on account of arrears of ground rent, taxes and water tax, were properly allowed. And for the same reason, the several mechanics' lien claims, excepting however the claims of Hutchinson & Brothers and Coyle & Brothers, constitute proper items of allowance. The claims of Hutchinson & Brothers and Coyle & Brothers are defective, because it does not appear from the face of the accounts, nor from any paper accompanying the same, at what time or times the materials were furnished. The Code provides, that the claim shall set forth the time when the materials were furnished. The object of this provision is to enable the owner, or purchaser and other lien creditors, to trace out the truth of the claim and guard against fraud and imposition. These accounts however, neither state the day or year, when the materials were furnished. It was suggested that if they are defective as lien claims, the appellee has the right to insist upon their payment as materials furnished upon his credit in pursuance of his agreement with the exceptants. This he might do as against the *partnership assets*, because he would under such circumstances be a *partnership creditor*. But he is now claiming payment out of a particular fund, constituting part of such assets, and this he can only do, upon the ground that the claim is a charge or lien upon the fund

itself. If it be not of such a character, then he is but a *general creditor* to be paid out of *the general assets of the firm.* The Code, however provides. that the claim or lien may be amended from time to time as may be necessary and proper. *Art.* 67, *sec.* 41, *Rev. Code.* The fund is in a Court of equity for distribution among the parties entitled. The appellee as purchaser has in good faith paid the claims, and as such, he is entitled to have the claims amended in conformity with the requirements of the Code, and when so amended they will constitute proper items to be allowed by the auditor.

We see no objection to the other mechanic lien claims allowed in the account. They conform in all respects to the requirements of the statute. The materials charged in these accounts were furnished to the owners of the lots, and notice of an intention to claim a lien within sixty days after the materials were furnished, was under such circumstances unnecessary. Such notice is required only when the materials are furnished to a person other than the owner or his agent. *Art.* 67, *sec.* 11, *Rev. Code.*

The exceptants' claim for *usury* was properly disallowed. The appellee agreed, it is true, to convey to the lessees the rear lot in fee, but it was upon the condition that they finished the houses according to the terms of their contract of May 8th. This they were unable to do, and in consideration of additional advances to be made by the appellee, and an extension of the time for the completion of the houses, they surrendered by deed all claim and interest to the rear lot. The consideration of the surrender was a good consideration, and not in any sense *usurious.*

It is also insisted, that the mode in which the account is stated is objectionable, because the auditor has aggregated the proceeds of sales of the eight houses, and has aggregated the mortgage claims and liens, instead of charging the proceeds of sale of each house with the

Rust, *et al.*, Adm'rs *vs.* Chisolm, *et al.*

charges and liens upon each separately. The proper mode of stating an account ordinarily would be to charge the proceeds of sale of each house with the advances, and liens upon the same. But in this case no injury is done to the exceptants by aggregating the proceeds of sale. The appellee was in possession of the property under the second mortgage, and according to our construction of the terms of the mortgage and the proceedings under which the property was sold, he had the right to claim out of the proceeds of sale, the amount due on the two mortgages, and all liens and charges upon the eight houses; now the sales of the houses aggregated $24,600, and it appears from the record that the mortgage debt, liens and taxes amount to a sum exceeding the entire proceeds of sale. So whether the sales are treated in the aggregate or distributively, is a matter of no consequence to the exceptants.

There is a slight error in stating the amount due or advanced under the second mortgage. It should be $5226.86 and not $5266.80, as stated in the account.

We shall remand the cause in order that the mechanics' lien claims of Hutchinson & Bros. and Coyle & Bros. may be amended as stated in the former part of this opinion, and we shall do so without affirming or reversing the order of the Court below. *Art.* 71, *sec.* 51, *Revised Code.*

*Cause remanded under*
*sec.* 51, *Art.* 71, *Rev. Code.*

(Decided 13th January, 1882.)