HENRY BRUNT *vs.* THE FARINHOLT-MEREDITH
COMPANY.

MARY COALE DUGAN *vs.* SAME.

THE NATIONAL JUNIOR REPUBLIC *vs.* SAME.

*Mechanics' liens : notice; items, furnished at different times
under single contract.*

In order to gratify the requirements of the mechanics' lien
laws as to notice of intention to claim a lien, a notice within 60
days from the last item furnished is sufficient to cover all items
furnished under a contract, although furnished at different
times; but the right of a material man to a lien for furnishing
materials can not be kept alive by furnishing materials outside
of and in addition to those specified by the contract, after such
contract has been performed.                              p. 133

*Decided June 24th, 1913.*

Three appeals from the Circuit Court of Anne Arundel
County in Equity (BRASHEARS, J.).

The facts are stated in the opinion of the Court.

The three causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*James M. Munroe* (with whom was *Ferdinand C. Dugan* on the brief), for the appellant.

*Winson G. Gott,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The three appeals of *Henry Brunt* v. *Farinholt-Meredith Company, Mary Coale Dugan* v. *Same,* and *The National Junior Republic of the City of Baltimore* v. *Same,* were argued together.

The firm of De Waard and Sons, contractors and builders, entered into a contract with each of the appellants for the erection of a house—those of Mr. Brunt and Miss Dugan being in Annapolis and that of the National Junior Republic being at Annapolis Junction, in Anne Arundel County. The Farinholt-Meredith Company furnished materials for the three houses at the request of the contractors, and, having filed Mechanics' Liens against the respective houses, instituted proceedings in equity to enforce them. The lower Court on December 17, 1912, passed decrees in favor of the plaintiff (appellee) in each case, providing that unless the amounts named be paid within thirty days the respective properties should be sold, and containing the usual provisions in such decrees. From the respective decrees the defendants appealed, and as some of the principal questions are involved in all of them and they must be governed by the same principles of law, we will pass on the three cases in one opinion.

1. Decree against house of Henry Brunt.

This decree is for $642.94 with interest from January 23rd, 1911,—being the total amount of the plaintiff's claim. The bill of particulars contains items furnished from July 2nd, 1910, to October 26th, 1910, amounting to $634.65, and

then on October 29th there was a charge for some items amounting to $8.29. Notice of the intention of the company to file a lien claim was served on Mr. Brunt on December 21st, 1910. He concedes that the items furnished from October 5th to October 26th are properly chargeable and that the appellee is entitled to a lien for them, but he contends that the items delivered prior to that time were not furnished under the same contract or understanding between the appellee and the contractors, and hence as to them the notice was not in time. The testimony on the part of the plaintiff is not altogether clear. When Mr. Carey L. Meredith, secretary. and treasurer of the appellee, testified in chief he said, in answer to the question, how they came to furnish the material on this building: "Mr. De Waard came to our office after he had put up some of the rough lumber which he furnished himself from a sawmill in the country and asked us for a bid on a small list of materials, which amounted to $252.64." That list was filed with the examiner and marked "Exhibit A." He was then asked: "Did this consist of all materials furnished on the job?" and replied, "No; he afterwards ordered a lot of materials not included in this list each day as he needed it."

"Exhibit A" is not in the record but on cross-examination of that witness it appears that it was dated October 1st, 1910, and was what the witness called an "estimate." He said the house was nearly half completed when the estimate was made, and the contractors had then already bought "approximately $350.00" from the appellee for the Brunt house. Apparently either Mr. Meredith was mistaken when he testified in chief that the contractors "afterwards" ordered the materials not included in the list, or the record does not correctly state what he testified to, for with the exception of a small difference between the amount of the estimate and the sum of the items furnished between October 5th and October 26th, the bill of particulars shows that the greater part of the bill was furnished *before* Mr. De Waard asked for a bid on the list

of materials in the estimate, and not *afterwards,* as his evidence in chief states. On cross-examination he stated that the materials furnished before October 1st were not furnished pursuant to any agreement between them that his company was to furnish them, and he did not know from day to day that the contractors were going to buy from him for this house; that when they furnished the articles on the second of July that might have been the last order they would have gotten from the De Waard for the Brunt house. He was then asked: "Then you had no contract with De Waard to continue to furnish his material for the Brunt house or were under no obligation to continue to sell him, or for him to buy from you but when he sent his orders from day to day you furnished the things and sent them to the place that he told you to," and replied: "That is right."

The following also appears in his cross-examination:

"16 Q. These items charged in this account are widely separated, for instance on the 1st day of August you sell De Waard and Sons 1 keg of 20 penny nails, and there appears to be nothing further charged until the 16th of August, more than two weeks later, when you furnished him the 20 penny nails on the 1st of August you had no contract or agreement to furnish anything else? A. No. 17 Q. And you simply might or might not receive any further orders? A. Yes, sir. 18 Q. And does that apply all the way through to everything furnished? A. That applies until we get to the list of materials estimated from. 19 Q. The list of things of October 1st, 1910? A. Yes. 20 Q. These are the things that you had a contract with De Waard to furnish at the prices specified therein? A. Right. I want to say that the reason for the long time between deliveries was because of the fact that they put their rough lumber in from the country sawmill, and all nails and other materials from us which explains why it would be a long time between buying from us. 21 Q. In other words they were buying first from one person and then another, wherever

they chose, and you had no contract to furnish anything except the items mentioned in Exhibit A? A. That is right." It is true he said on re-examination that all of the goods furnished for the Brunt job were furnished continuously, considered to be one bill and so charged, but while it may be true that in his dealings with the contractors he treated it as one bill, the testimony does undoubtedly show that the materials furnished after October 1st were furnished under a separate contract from those prior to that time. Mr. William G. Meredith, shipping and order clerk for appellee, testified as follows on cross-examination: "22 Q. Did he (De Waard) make any contract with you to furnish all this material, or just send in orders from time to time as he wanted stuff? A. He made a contract with C. L. Meredith and afterwards orders came to me and I would enter them on the day book and then on the wagon. 23 Q. Is the contract you refer to, is this the contract mentioned in the paper marked 'Exhibit A' which he made with C. L. Meredith? A. It is. 24 Q. That is the only contract you know anything about? A. Only one I know of. 25 Q. All the other orders came in from various parties from time to time as he wanted the things? A. Yes."

Having quoted from the testimony at some length, it would be well at this point to recall the principles of law applicable to such facts. By section 11 of Article 63 of the Code it is provided: "If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall not be entitled to a lien unless, within sixty days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien." In *Trustees of Ger. Luth. Church* v. *Heise & Co.,* 44 Md. 453, JUDGE ALVEY, in speaking for the Court, announced certain rules which

have been followed in cases of this kind and which may be thus stated: (1) It is not incumbent upon a claimant who furnishes materials to a builder, or other person than the owner. to establish an *express* antecedent contract made with respect to the exact quantity of materials to be furnished by him;

(2) "In the absence of evidence of such express contract, the character of the account, the time within which * * * the materials were furnished, and the object of the * * * materials may afford proper grounds for the presumption that the * * * materials were furnished with reference to an understanding from the commencement that such * * * materials should be * * * furnished, if required by the builder;"

(3) "In such case, it is from the last item in the account that the notice, and the time within which to take the lien, should date;"

(4) "But where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item in the account."

The evidence is not sufficient to create a presumption that there was "an understanding from the commencement that such materials should be furnished, if required by the builder," but on the contrary it does affirmatively appear that there was no such understanding. It cannot be doubted that if the estimate of October 1st had not been satisfactory to the contractors, they would have been under no obligation to purchase the material furnished in that month from the appellee. That was admitted by Mr. Meredith in his evidence. The articles delivered during the month of October were furnished under the contract of October 1st, and if it be conceded that as to those delivered prior to that month

the presumption spoken of in paragraph (2) of what we have
taken from 44 Md., *supra,* would arise, they were furnished
under a different contract from that under which those in
October were furnished.   What is said of the claim of Myohl
& Luken in *Hensel* v. *Johnson,* 94 Md. 729, is very ap-
plicable to this claim.   JUDGE PAGE said on page 736 the
original contract was to furnish "not such lumber as might
be needed for the construction of the houses but a specific
quantity, contained on a list, a copy of which is in the
record.   The firm agreed to furnish the builder with those
specified quantities for the sum of $1,487.45.   Subsequently
the builder purchased more lumber, not by virtue of the
original agreement, but as he needed it.   The lumber fur-
nished in addition to the kinds and quantities included in
that list was as much under a separate contract as was the
lumber furnished by the firm to Eckstine for other work that
the latter was then conducting."   Again he said: "Of the
delivery on the 2nd day of September, that being the last,
Mr. Luken states that it was delivered, not by virtue of any
understanding entered into before the beginning of the work,
but because it 'was ordered either that day or previous to
that.'   So that this case is clearly within the rulings in
*Trustees of the German Luth. Church* v. *Heise & Co., supra,*
where it was held that when the materials are furnished
under separate distinct contract, the right to take the lien
must date from the time of furnishing the different parcels
of material and not from the last item.   And this rule will
prevail 'if the materials are furnished under distinct con-
tracts, though to be used for the same purpose, or by the
contractor in executing one and the same contract with the
owner.'   *Watts* v. *Wittington,* 48 Md. 356."

Section 11 of Article 63, requires a notice to be given by
the material-man or his agent within sixty days after ma-
terials are furnished, under a contract with an architect,
builder or any other person except the owner of his inten-
tion to claim the lien, in order that the owner may have the

opportunity to protect his property against liens, in case the contractor does not pay for materials he purchases, and hence it is important that the material man should not be permitted to extend the time within which he is required to give notice in order to obtain a lien for materials furnished under one contract, by counting from a later period, when he furnished materials under a subsequent contract or order. While our decisions hold that a notice within sixty days from the last item furnished under a contract is sufficient to cover all items furnished under that contract—although they may cover quite a period of time—it would be very unreasonable and sometimes afford an opportunity to defraud an owner, if the material-man could be permitted to keep alive or revive his right to a lien by furnishing materials outside of and in addition to those contemplated by a contract after such contract had been performed. In this case there is no ground for suspecting fraud on the part of the appellee, but inasmuch as under the authorities cited and others which might be, the materials furnished in Oct. were furnished under a separate and distinct contract from the arrangement under which those delivered prior to October 5th were furnished, we are of the opinion that this decree should only have included the items delivered in October and should not have included those delivered prior thereto.

2.   The decree against house of Mary Coale Dugan.

To this case much that has been said above is applicable. The notice of an intention to file a lien claim was served on Miss Dugan in Baltimore on December 21st, 1910, and on December 23rd, 1910, one was also posted on the front door of the house, but we will treat the former as sufficient. The first items in the account were one and a half pounds caps and nails and sixty bags cement on June 6th, 1910, and the last two items were 64 feet lattice on October 22nd, and 500 feet, 6 inch flooring on October 29th, 1910. The total amount of the bill was $1,168.13 with credits of $18.95, leaving a balance of $1,149.18. There is evidently an error in

the testimony of Carey L. Meredith where he says they fur-
nished the first mill-work on June 9th, and it was furnished
continuously from that time until October 22nd, 1910. The
only item in the account of June 9th is for "20 bags cement,"
and the contractors did not accept their bid for the supply of
mill-work on the house until June 18th. Indeed the proposi-
tion by the appellee "to furnish mill-work for Miss Dugan's
house, per plans and specifications, for the sum of seven hun-
dred and thirty dollars ($730.00)" is dated June 15th.
Then we find included in the bill of particulars of date of
October 1st, "Mill-work per estimate, $730.00," and he testi-
fied that "The item furnished on the 22nd of October was
extra. We finished as far as the estimate went on October
1st, the item on the 21st was furnished outside of the $750
estimate referred to in the acceptance by De Waard dated
June 19th, 1910." There is some confusion about that, as
there is no item of the "21st" and the amount is $730, but
he evidently meant the "22nd" and "730." Inasmuch as
the notice was not given until December 21st, it is clear that
there can be no lien for any part of the bill furnished prior
to October 22nd (the last item being on the 15th), unless the
item furnished on that day, or the one on October 29th, can
be tacked on to all or some part of the prior items. That
neither of them can revive the contract for the mill-work
would seem to be settled by what we have said above, and by
the testimony in this case. That was undoubtedly a separate
contract. It was in writing and was for the mill-work men-
tioned in it. It was treated by the appellee as separate. The
only reference to the mill-work furnished under that con-
tract in the bill of particulars is the entry of "Mill-work per
estimate, $730.00," which was made in appellee's account on
October 1st. As we have seen Mr. Meredith testified in
chief, "We finished as far as the estimate went on October
1st," and in his cross-examination this appears: "11 Q. And
you have stated in your examination in chief that the reason
you charged all your mill-work in a lump is that all of the

mill-work per estimate $730 had been furnished at the time it was charged for? A. I did, that is all right. * * * 20 Q. Where did that lattice work go? A. I don't know whether it went on the porch or under the porch or under the steps, it could have gone to either place. * * * 25 Q. Was this lattice work called for in the specifications of the mill-work? A. Some of it was. A lattice is always included in mill-work if shown on the plans, but in this case it was more of it than was shown and the extra was agreed upon by Mr. De Waard and Sons. 26 Q. And this particular item was an extra and not included in the specifications? A. Yes, that is right."

Manifestly then this extra lattice furnished after the contract for mill-work was completed and charged cannot bring the mill-work included in the contract within the sixty days. It is equally clear that the item of October 29th cannot have such effect. Mr. Meredith's testimony on cross-examination as to that was as follows: 21 Q. What is this 500 feet of flooring charged for October 29th? A. That was some common flooring for the third floor as near as I can remember. 22 Q. That is not mill-work? A. No. I want to say that it could have been used in the cellar for coal bin or attic flooring. I remember the order distinctly, don't remember what purpose it was used for."

The whole item of "mill-work per estimate, 730.00" must therefore be rejected because it was a separate and distinct contract, and the notice was not given within sixty days from the time any part of it was furnished. We do not deem it necessary to determine whether that charge, without giving any dates, items or prices of the items, was a sufficient compliance with the requirements of the statute, but will only call attention to what is said in *Rust* v. *Chisolm,* 57 Md. 382, and to section 19 of Article 63 of the Code. It was said in that case "The object of this provision is to enable the owner, or purchaser and other lien creditors, to trace out the truth of the claim and guard against fraud and imposition." See also *Thomas* v. *Barber,* 10 Md. 380.

The other items in the account we think are sufficiently shown to come within paragraphs (1) and (2) of what we have said about the case in 44 Md. to be allowed. The testimony of Mr. Meredith satisfies us that there was an understanding from the commencement that such materials as those included in the account from June 6th to October 22nd (excepting the mill-work, which was furnished under a special and distinct contract) should be furnished. He said they furnished all the material, except some rough framing and sheathing, which the contractors bought in the country, and they were furnished continuously between the dates named and without any unusual intervals between the dates. The item of October 29th was apparently under a separate contract from the others, but was within the sixty days. So giving the account as liberal a construction as we feel justified in doing, we think the decree should have been for $419.18 with interest.

3.   Decree against house of The National Junior Republic.

This decree was for $868.21 with interest from January 23rd, 1911. The total bill was for $902.80, with credits amounting to $34.59. There are a number of items from July 15th to October 27, 1910, amounting to $148.46 and then one item of "Mill-work per estimate $750.00," which is not dated, but entered just below the $148.46, and then below $898.46 are the following, "November 12th, 2 pair blinds (cut down) $2.80, 8 lts. 10 x 12 $.64, 1lts. 24¼ x 30 $.50, 1 lts. 12 x 14 $.10, 1 lts. 18⅛ x 34 $.30," making $902.80.

The only notice of an intention to claim a lien was served on the 7th of January, 1911, on Claude E. Arnold, who is described as "Superintendent of the National Junior Republic, at Annapolis Junction, Anne Arundel County, Maryland." Without referring to the testimony we think the service on Mr. Arnold was sufficient, as we understand he was acting superintendent and was the highest officer or agent

of the corporation at that time in Anne Arundel county. It
is also claimed that it was not shown that the materials were
delivered, but we are of opinion that was sufficiently proven.
The serious difficulty is as to the account. The contract for
mill work was made on June 18th by the same letter of
acceptance as that for the Dugan house. It was for $750.00
and was a separate and distinct contract. As we have seen
the only entry in the account, and, as we understand the
testimony, in the books of the appellee, was, "Mill-work per
estimate $750.00." That was apparently entered on October
27th, as it is under that date. The first item of the account
was furnished on July 15th, 1910, and from that time to
October 27th other items were furnished amounting to
$148.46. Amongst those were some blinds, and Mr. Marshall
testified that there were some things not in the estimate and
upon being asked what they were, he said, "Hardware, parti-
tions and few extra blinds and nails." It is manifest that
the item of "2 pair blinds (cut down $2.80" delivered on
November 12th did not differ from the items included in
$148.46 and they were treated by the appellee as different
and separate from the "Mill-work per estimate," which was
a separate and distinct contract. The item as to the blinds
(cut down) is thus spoken of in Mr. Meredith's cross-exam-
ination; "18 Q. So I understand that it was included in the
original estimate or as an extra? A. These were either extra
or extra for cutting down, but it appears to me that the price
covers the whole cost of the blinds and I think they were used
in the third-story dormer window, and if that was the case
they were not in the original estimate. 19 Q. Then according
to the best of your recollection and belief these blinds fur-
nished Nov. 12th were not in the original contract, but were
used in the third-story for windows not specified in the plans?
A. Yes." The other items of that date were clearly not a
part of the contract for the mill-work or the other items, as
is shown by the next question and answer: "20 Q. Also the
lights mentioned thereunder same date, were they also extra?

A. They were extras furnished for a dresser in the inside of house not on the original plans." Of course they cannot relate back to the other items, so as to bring them within the sixty days, as that was a separate contract—certainly as much so as the sand and lime referred to in *Hensel* v. *Johnson, supra,* under the claim of James H. Warthen, which was held to be under a separate and distinct agreement from that for plastering and pointing.

It is clear under the authorities and testimony that the two pairs of blinds furnished November 12th cannot bring the charge for mill-work included in the estimate within the sixty days, as it was a separate and distinct contract, and the only question is whether they can save the other items. We have concluded to allow them, as we think there is sufficient evidence in the record to show that those items were furnished under the terms of paragraphs (1) and (2) referred to above. That may be a somewhat liberal construction in favor of the appellee, but as among the items amounting to $148.46 blinds were furnished, and there is nothing to indicate an effort to simply extend the time within which notice could be given (the items of November 12th having been entered nearly two months before the notice was given) we feel justified in holding that the items amounting to $148.46 were included in the notice, but the mill-work in the estimate of $750.00, being a separate and distinct contract, must be excluded. Of course the $34.59 of credits must also be deducted and this decree should therefore have been for $118.21, with interest.

It follows that each of the decrees must be reversed and the causes remanded, in order that new decrees be entered in accordance with this opinion.

> *Decree in each of the three cases reversed, and causes remanded, the appellee to pay the costs in each case.*