UNITED STATES of America, to the use of NOLAND COMPANY, INCORPORATED,

v.

ALLIED CONTRACTORS, INCORPO-RATED, a body corporate
and
Maryland Casualty Company.

Civ. A. No. 9369.

United States District Court
D. Maryland.

March 13, 1959.

William A. Fisher, Jr., of Semmes, Bowen & Semmes, Baltimore, Md., for plaintiff.

Andrew B. Kingan, Jr., and T. Thornton Murray, Baltimore, Md., for defendants.

R. DORSEY WATKINS, District Judge.

This is a suit under the Miller Act, 40 U.S.C.A. § 270a et seq., brought by the United States to the use of Noland Company, Incorporated (Noland) against Allied Contractors, Incorporated (Allied), prime contractor, and Maryland Casualty Company, surety for said prime contractor, to recover One Thousand Thirty-Three Dollars and Thirty-Six Cents ($1,033.36) together with interest and costs on a statutory payment bond or bonds for materials furnished and delivered by Noland to Thomas Electric Company (Thomas), a subcontractor of Allied, in the prosecution of work under two government contracts in connection with the building of a Nike I project control area and a Nike I project launching area within the state of Maryland.

Allied and its surety in their answer to the complaint asserted as defenses to this action that statutory limitations under the Miller Act had run; that there was no evidence of the use on the job site of the materials furnished by plaintiff; and the general issue plea that the defendants never promised and were not indebted as alleged.[1]

Parties stipulated as to the facts which they felt were controlling, as follows:[2]

"3. Allied Contractors, Incorporated subcontracted a portion of the work called for under bond of said Government contracts to Thomas Electric Company.

"4. Noland Company, Incorporated, the use Plaintiff who was a distributor of electrical supplies, supplied and furnished to Thomas Electric Company for use on the projects covered by said Government contracts, by separate and distinct orders and not under a general or continuing contract to supply material, various materials at different times for the projects covered by bond of said Government contracts. Under Contract No. DA–18–020 Eng. 714, the use Plaintiff supplied material on the dates and at the prices indicated below:

| Invoice No. | Date of Delivery | Amount |
|---|---|---|
| 8270 | 12–22–54 | $ 26.72 |
| 1748 | 1–10–55 | 74.42 |
| 3431 | 2–10–55 | 17.29 |
| 1283 | 2–25–55 | 19.03 |
| 7799 | 3–24–55 | 3.32 |
| 8320 | 3–25–55 | 260.98 |
| | Total | $401.76 |

1. Defendants' answer does not meet the requirements of Rule 8(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A., that the defendant shall admit, deny, or state the lack of knowledge or information sufficient to form a belief as to the truth of plaintiff's allegations. The pleading that the defendants never promised as alleged and never were indebted as alleged is the form of "general issue" pleas in contract in the Maryland State Courts. It is intended as a general denial of a right of action by plaintiff. Plaintiff has not objected or excepted to defendants' pleadings.

2. The entire stipulation is quoted except for paragraphs 1 and 2 which merely recite that Allied was the general contractor and furnished the payment bond or bonds required under the provisions of the Miller Act.

Under Contract No. DA–18–020 Eng. 697, the use Plaintiff supplied material on the dates and at the prices indicated below:

| Invoice No. | Date of Delivery | Amount |
|---|---|---|
| 8796 | 12–28–54 | $211.61 |
| 520 | 1–24–55 | 25.68 |
| 4793 | 2–11–55 | 224.52 |
| 4792 | 2–15–55 | 49.94 |
| 6088 | 2–21–55 | 86.82 |
| 1859 | 4– 6–55 | 33.03 |
| | Total | $631.60 |

"5. Noland Company, Incorporated has never received payment for the material referred to above.

"6. On May 5, 1955, Noland Company, Incorporated notified Allied Contractors, Incorporated of its claim for such material by registered mail.

"7. Noland Company, Incorporated entered the present suit within one year from the date of final settlement by the United States and Allied Contractors, Incorporated of the two above mentioned Government contracts."

The case was then submitted on the stipulated facts for a ruling by the court on the merits. The applicable statutory provision is 40 U.S.C.A. § 270b, which provides as follows:

"(a) Every person who has *furnished* labor *or material in the prosecution of the work*[3] provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contracual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

"(b) * * * but no such suit shall be commenced after the expira-

---

**3.** Emphasis supplied.

tion of one year after the date of final settlement of such contract."

■ Upon oral argument the defendants abandoned the defense of failure to prove use on the job site of the materials furnished, and correctly so in view of such authorities as Fourt v. United States for use of Westinghouse Electric Supply Co., 10 Cir., 1956, 235 F.2d 433, 435; Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 1946, 153 F.2d 527, 529-530; Montgomery v. Unity Electric Co., Inc., D.C. Puerto Rico 1957, 155 F.Supp. 179, 180; United States for Use and Benefit of J. A. Edwards & Co., Inc. v. Bregman Construction Corp., D.C. N.Y.1957, 156 F.Supp. 784, 787;—each holding that to permit recovery under the Miller Act all that the materialman need show is that, in the words of the statute itself (see pertinent underlined portion above), the materials were furnished *in the prosecution of the work*[4] and that there is no requirement of proof that the materials were actually used or incorporated into the contract project. (Contra: United States for Benefit and Use of Westinghouse Electric Supply Co. v. Robbins, D.C.Mass.1954, 125 F.Supp. 25, 27).

By the time of submission of briefs the defendant had apparently abandoned the defense of "statutory limitations", that is, that no claim could be made, under the facts in this particular case, for material delivered more than ninety days prior to May 5, 1955, the date the Notice of Claim by the plaintiff was received by Allied. The defendants' brief stated, in part:

"*Specifically the issue is whether* under the Miller Act *a person* supplying materials to a sub-contractor, a government contractor, and to whom an unpaid balance is due, *without a contractual basis* either express or implied *with said sub-*

*contractor* (and as is stipulated) and who made only over-the-counter sales and which sales were a series of independent transactions, without the slightest knowledge of how much material will be needed or how long the sub-contractor's contract will run, *can recover on the payment bond* executed by the Allied Contractors.

\*   \*   \*   \*   \*   \*

"The proviso of Section 2(a) [of The Miller Act; section 270b of Title 40 U.S.C.A.] is most explicit and definitely limits the claimants under the Miller Act to those materialmen and laborers and sub-contractors who have direct contractual relationship with a sub-contractor and who give the statutory notice of their claims to the prime contractor.

"To allow the Plaintiff in his remote relationship to recover under the Miller Act would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act:

" 'A sub-contractor may avail himself of the protection of the bond by giving written notice to the contractor, but that is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond.' H. Rep. No. 1263 (74th Cong., 1st Session) Page 3.

"*The only question in this case is whether Noland* the materialman who sold the goods to Thomas Electrical Company *had direct contractual relationship with Thomas* Electrical Company, which would enable him to recover on the Primary Contractor's bond. On the other hand, if Noland did not have direct contractual relationship with the Thomas Electrical Company, then Noland

---

4. It is worth while noting that the same result has been reached by the Maryland Court of Appeals with respect to mechanics' liens. Maryland Brick Company of Baltimore City v. Dunkerly, 1897, 85 Md. 199, 212, 36 A. 761; District Heights Apartments, Section D-E, Inc., v. Noland Company, Inc., 1953, 202 Md. 43, 48-49, 95 A.2d 90, 39 A.L.R.2d 387; Clark Certified Concrete Co., Inc., v. Lindberg, 1958, 216 Md. 576, 579-581, 141 A.2d 685, 687-688.

stands in too remote a relationship to secure the benefits of the bond.

"It is plain to see that Noland Company, Inc. has never had a direct contractual relationship either express or implied (see stipulation) with the Thomas Electrical Company." (Emphasis supplied).

The expression of legislative intent quoted in the defendants' brief was construed by the Supreme Court in MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 1944, 322 U.S. 102, 108, 64 S.Ct. 890, 894, 88 L. Ed. 1163, as indicating an intent on the part of Congress to deny recovery on the bond to a person supplying materials to a materialman of a government contractor on the ground that a supplier of a materialman "stands in too remote a relationship to secure the benefits of the bond." There was no question in that case of the issue raised herein by the defendants of the lack of a direct contractual relationship between the subcontractor and the materialman as the court expressly found a direct contractual relationship between the materialman and his supplier to exist. The defendants' contention in the instant case that the relationship of Noland is too remote to permit recovery on the bond is without merit and merely clouds the issue as Noland, the materialman, clearly had a direct relationship with Thomas the subcontractor. The question is whether or not this direct relationship was a contractual one.

Paragraph 4 of the Stipulation of Facts filed in this case, quoted above, states that the materials in question were furnished on separate orders to Thomas by Noland. The Memorandum of defendants refers to these transactions between Noland and Thomas as over-the-counter sales. It is difficult to understand how it can be claimed that there was no direct contractual relationship between the two parties, as an over-the-counter sale on credit is certainly a contract; and, as the sales were made directly to Thomas, it would, therefore, appear that there was a direct contractual relationship between the two parties in each sale. This view is substantiated by Judge Chesnut's holding in United States, to Use of Noland Co., Inc., v. Maryland Casualty Co., D.C.Md.1941, 38 F.Supp. 479, 482 where the court in allowing the materialman to recover judgment against the defendants on the payment bond which had been obtained to meet the requirements of the Miller Act, characterized the transactions between the supplier and the subcontractor as follows:

"There was an open account kept by Noland [materialman] on its books with Gluck [subcontractor] which did not segregate charges and credits in the account between them with respect to the several particular jobs for which Noland was furnishing material to Gluck, until after May 1939. *There were no specific written contracts between Noland and Gluck; but simply orders given and accepted for material* on the basis of payment on the terms of 2% discount if bills were paid within 10 days, or net thirty days. No extended credits were given by Noland to Gluck other than the short term notes above mentioned. It is not unusual for material men such as Noland, having the relation that it did with Gluck, to accommodate them from time to time with loans of money." (Emphasis supplied).

Likewise the same conclusion is dictated by a recent opinion of the Court of Appeals for the Fourth Circuit where the court, in describing the relationship between the subcontractor and the materialman in a Miller Act suit, stated there was "no contract between Southern [the materialman] and Seaboard [the subcontractor] *aside from the billings*". (Emphasis supplied). Then after quoting section 270b of Title 40, U.S.C.A. and again quoting the proviso of said section, the court describes this transaction as one involving "a materialman, having direct contractual relationship with a subcontractor * * *." (American Casualty Company of Reading, Penn-

sylvania v. Southern Materials Company, 4 Cir., 1958, 261 F.2d 197, 198, 199).

Accordingly this court holds that Noland, having a direct contractual relationship with the subcontractor, furnished the material in question to said subcontractor in the prosecution of work on a government contract.

■ However, the position originally taken by the defendants, and apparently later abandoned, that the plaintiff under the facts in this case can not successfully assert a claim for material delivered more than ninety days prior to May 5, 1955, the date the Notice of Claim by the plaintiff was received by Allied, appears to be a valid, although only partial, defense.

The language of the Miller Act regarding notice to the general contractor is comparable to that contained in the Maryland Mechanics' Lien Law (Article 63, section 11 of the Code of Public General Laws of Maryland, 1957 Edition) requiring notice to the owner—which is as follows:

> "If the contract for furnishing * * * materials * * * shall have been made with * * * any other person except the owner * * * the person * * * furnishing materials, * * *, shall not be entitled to a lien unless, within ninety days after furnishing the same, he * * * shall give notice in writing to such owner * * *."

As construed by the Maryland Court of Appeals in Brunt v. Farinholt-Meredith Co., 1913, 121 Md. 126, 88 A. 42, unless there is a continuing contract to furnish materials on a project, notice must be given within (then sixty but now) ninety days of furnishing material under each separate order. The Maryland Court of Appeals has announced the applicable rules as follows:

> " * * * "(1) It is not incumbent upon a claimant who furnishes materials to a builder, or other person than the owner, to establish an *express* antecedent contract made with respect to the exact quantity of materials to be furnished by him;
>
> " '(2) In the absence of evidence of such express contract, the character of the account, the time within which * * * the materials were furnished, and the object of the * * materials may afford proper grounds for the presumption that the * * materials were furnished with reference to an understanding from the commencement that such * * * materials should be * * * furnished, if required by the builder;
>
> " '(3) In such case, it is from the last item in the account that the notice, and the time within which to take the lien should date; * * *
>
> " '(4) But where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item in the account.' " (Brunt v. Farinholt-Meredith Co., supra, 121 Md. 126, 131, 88 A. 42, 44—paraphrasing and quoting from Trustees of German Lutheran Evangelical St. Matthew's Congregation of Baltimore v. Heise, 1876, 44 Md. 453.)

And the reasons therefor are stated to be:

> "Section 11 of Article 63 requires a notice to be given by the materialman or his agent within 60 days after materials are furnished, under a contract with an architect, builder, or any other person except the owner, of his intention to claim the lien, in order that the owner may have the opportunity to protect his property against liens, in case the contractor does not pay for materials he purchases, and hence it is important that the materialman should

not be permitted to extend the time within which he is required to give notice, in order to obtain a lien for materials furnished under one contract, by counting from a later period, when he furnished materials under a subsequent contract or order. While our decisions hold that a notice within 60 days from the last item furnished under a contract is sufficient to cover all items furnished under that contract—although they may cover quite a period of time—it would be very unreasonable and sometimes afford an opportunity to defraud an owner, if the materialman could be permitted to keep alive or revive his right to a lien by furnishing materials outside of and in addition to those contemplated by a contract after such contract had been performed." (121 Md. at pages 132–133, 88 A. at page 45.)

These considerations by analogy apply with equal force to the statutory notice required to be given under the Miller Act.

Plaintiff, however, while admitting that under a typical mechanics lien statute such as Article 63, section 11 of the Code of Public General Laws of Maryland, 1957 Edition, the use plaintiff in the instant case would not be entitled to recover for all the items delivered but only for those which were delivered within the ninety day period preceding notice, seeks to differentiate the language of the two statutes in question. Plaintiff contends that the Maryland Act refers to "the contract for furnishing * * * materials", while the Miller Act refers to every "person who has furnished labor or material in the prosecution of the work * * *" from which it is argued that under the Miller Act, unlike the Maryland statute, the type of contract the materialman has with the subcontractor is not important, but that the important thing is to furnish material for the project, thus allowing a materialman to recover on the bond under the Miller Act if he has given notice within ninety days of the furnishing of the last of such material, irrespective of whether said material was furnished under a continuing contract or under separate and distinct orders.

Plaintiff to support its position cites a number of state court decisions construing their own state mechanics lien statutes. These cases the plaintiff summarizes as holding "that if such a statute employs language similar to that used in the Miller Act, then the question is not what kind of contract to furnish material was entered into, but that the important question is whether the materials were furnished for one job as a continuous undertaking."

While it is true that the first portion of section 270b of Title 40 U.S.C.A. refers to every person who has furnished material in the prosecution of the work, the plaintiff has overlooked the fact that its right to recover on the payment bond is predicated upon compliance with the proviso following the first portion which states, in pertinent part:

"Provided, however, That any person having direct contractual relationship with a subcontractor * * * shall have a right of action * * * upon giving written notice to said contractor within ninety days from the date on which such person * * * furnished or supplied the last of the material for which such claim is made * * *." As was recognized by the Supreme Court:

"* * * Ostensibly the payment bond is for the protection of 'all persons supplying labor and material in the prosecution of the work' and 'every person who has furnished labor or material in the prosecution of the work' is given the right to sue on such payment bond."

* * *

"However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment. * * * Specific terms prevail other the general in the same or another statute which otherwise might be control-

ling.' 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704.

"*The proviso* of Section 2(a), which had no counterpart in the Heard Act, *makes clear that the right to bring suit on a payment bond is limited to* (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) *those materialmen,* laborers and sub-subcontractors *who,* lacking express or implied contractual relationship with the prime contractor, *have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor.*" MacEvoy Co. v. United States, supra, 322 U.S. 102, 107–108, 64 S.Ct. 890, 893, 88 L.Ed. 1163. (Emphasis supplied).

In view of the express requirement that there be a direct contractual relationship between the materialman and the subcontractor, the significance or import of this requirement aside, this court is unable to construe the specific language of the proviso as differing essentially from the wording of the notice provision of the Maryland Mechanics Lien Act.

There can be no doubt that the notice provision of the Miller Act was enacted for the protection of the general contractor (United States ex rel. and for Use and Benefit of Korosh v. Otis Williams & Co., D.C.Idaho 1939, 30 F.Supp. 590, 593; United States, for Use of Bruce Co., Inc. v. Fraser Construction Co., Inc., D.C.Ark.1949, 87 F.Supp. 1, 5) and that in the absence of an undertaking by the materialman to supply a specified amount of materials, or a general undertaking to supply all the materials required by the subcontractor on the government project, to allow the materialman to keep alive indefinitely his right of action on the payment bond by making only over-the-counter sales on extended credit, which sales were a series of independent transactions, without the slightest knowledge of how much material would be needed or how long

the subcontractor's contract was to run, would be to defeat the intendment of the notice provision. Accepting, arguendo, the plaintiff's position "that the important question is whether the materials were furnished for one job as a continuous undertaking", there has been no showing by the plaintiff that there was the necessary continuous undertaking. It was stated during oral argument, without denial by plaintiff, that Noland was like a department store; that Thomas ordered what it wanted, when it wanted, and was billed thereafter for materials purchased; and that Thomas was free to buy its materials anywhere and from anyone that it chose. The stipulation of facts is inconsistent with, and negates, the contention that the materials were furnished for one job as a continuous undertaking.

The authorities relied upon by the plaintiff, rather than stating principles contrary to those announced by the Maryland Court of Appeals (and previously quoted in this opinion as set out in Brunt v. Farinholt-Meredith Co., supra, 121 Md. 126, 88 A. 42), appear to this court to be completely in accord with the Maryland decisions. Plaintiff, for example, cites the Supreme Court of Minnesota in Barrett v. Hampe, 1952, 237 Minn. 80, 53 N.W.2d 803, at page 805, in which the court said:

"In Paine & Nixon Co. v. Dahlvick, 136 Minn. 57, 58, 161 N.W. 257, we stated as a general rule:

"'* * * The only question is whether the finding is sustained by the evidence. If the work being done is one continuous work constituting one job, though there are several agreements for the furnishing of different materials, each being a separate contract for some part of the general work, a lien claim filed within 90 days after the last item preserves a lien for all. [Citing cases]. If the contracts are separate and distinct and unrelated, not in connection with a continuous work or job, a lien claim filed does not pre-

serve a lien upon materials furnished prior to the 90 days.'

"The question is not what kind of contract was entered into, but whether the materials furnished or the work performed was all pursuant to one job as a continuous undertaking * * *".

For the reasons stated above this court holds that the over-the-counter sales by Noland to Thomas constituted separate and distinct contracts not connected with a continuous undertaking to furnish all the required materials for one job.

Accordingly, the court will sign an appropriate order entering judgment without interest [5] in favor of the plaintiff as against the defendants for all materials furnished within the ninety day period prior to the giving of the required statutory notice, each side to pay its own costs.

---

Colbert C. McClain, Philadelphia, Pa., for Henry T. Zipley.

Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

F. G. Fiechter, Jr., Philadelphia, Pa., for trustee in bankruptcy.

---

5.  See United States, to Use of Noland Co., Inc., v. Maryland Casualty Co., D.C.Md., 1941, 38 F.Supp. 479, 484–485.