TERRITORY OF ARIZONA AT THE RELATION OF GAINES, TAX COLLECTOR OF COCHISE COUNTY, v. COPPER QUEEN CONSOLIDATED MINING COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 89.   Argued March 3, 4, 1914.—Decided April 6, 1914.

Where the Supreme Court of a Territory has made a statement of facts in the nature of a special verdict, this court must consider the case when it comes here on appeal upon that finding.

In exercising appellate jurisdiction over the territorial courts in cases involving construction of a statute by the Territory, this court will not, in the absence of manifest error, reverse the action of the territorial court in regard to such construction; and so *held* as to the construction placed by the Supreme Court of Arizona on the statutes of that Territory defining the powers and duties of the Board of Equalization.

In this case *held* that payments of taxes made under an attempted com-
promise agreement did not operate to estop the taxpayer from con-
testing the legality of the action of the taxing authorities in increas-
ing the assessments on the property.

In this case this court affirms the judgment of the Supreme Court of
the Territory of Arizona that the Board of Equalization had no
power under the statute of the Territory to raise the separate assessed
valuation of certain mining claims of groups which had originally
been assessed *en masse.*

13 Arizona, 198, affirmed.

THE facts, which involve the construction of the statutes
of Arizona regarding valuation assessments for taxation,
are stated in the opinion.

    Mr. Elias S. Clark and Mr. George P. Bullard, Attorney
General of Arizona, with whom Mr. William G. Gilmore and
Mr. William C. Prentiss were on the brief, for appellant.

    Mr. Frederick N. Judson, with whom Mr. E. E. Ellin-
wood and Mr. John F. Green were on the brief, for appellee.

.    MR. JUSTICE DAY delivered the opinion of the court.

    This was a special statutory proceeding (Laws of Ter-
ritory of Arizona, 1903, Act No. 92, p. 148) brought in the
District Court of the Second Judicial District of the
Territory of Arizona in and for the County of Cochise to
enforce the lien of the Territory for the payment of taxes
for the year 1901 assessed against certain patented mining
claims in the County of Cochise, amounting to $120,039.35,
the tax being assessed upon the increased valuation of the
mining claims of the Company. made by the Board of
Supervisors of Cochise County.   In the trial court judg-
ment was rendered for the defendant.   Upon appeal to
the Supreme Court of the Territory of Arizona the judg-
ment was affirmed (13 Arizona, 198).   An appeal was
prosecuted to this court under the statute regulating ap-
peals from territorial courts (18 Stat. 27).

The Supreme Court of the Territory of Arizona made a statement of facts in the nature of a special verdict, and upon that finding this court must consider the case on this appeal. *Eagle Mining Co.* v. *Hamilton*, 218 U. S. 513, 515; *Zeckendorf* v. *Steinfeld*, 225 U. S. 445, 449. From the facts thus found the following appears:

The appellee, a corporation doing business and owning real and personal property in Cochise County, Arizona, listed and returned for assessment in 1901 sixty-five mining claims belonging to it, by name, but as one tract, said to contain 636 acres and valued at $3,180, with improvements valued at $55,431.76. Some of the claims are not contiguous to the others.

On July 17, 1901, the County Board of Supervisors, sitting as the Board of Equalization for Cochise County, after notice to the Company and hearing at which appellee's superintendent and agent appeared, raised the assessment upon eight of the sixty-five claims originally assessed *en masse*, in amounts varying from $50,000 to $1,000,000.

Prior to September, 1901, the appellee brought suit in the District Court of Cochise County to enjoin the collection of the tax, alleging that the increase had been fraudulently made and the property overvalued. It tendered the sum of $14,133.12, being the amount of the tax upon all of its property before the increase. The District Court found that the increase was not based upon information or evidence but was made arbitrarily and capriciously for the purpose of imposing an unjust share of the burden of taxation upon the appellee, and granted the injunction, upon condition, however, that the appellee pay the $14,133.12 into court and also the further sum of $9,589.20, the tax upon the increase in valuation of certain personal property, which the District Court found to be valid. The $14,133.12 was accepted by the County Treasurer, who was *ex officio* tax collector, "on account of any

moneys which might ultimately be determined as due from said company for its taxes for said year." The Supreme Court, upon appeal, reversed the case and remanded it for new trial (*County of Cochise* v. *Copper Queen Co.*, 8 Arizona, 221). Subsequently, an agreement of compromise was made, under authority of a resolution of the Board of Supervisors, the appellee paying the further sum of $5,661.44 in full settlement of taxes for the year 1901 and the injunction suit being dismissed. This last amount has been retained by the County.

Thereafter a mandamus suit was instituted to compel the tax collector to commence suit against the appellee for the balance of the 1901 tax, upon the ground that the compromise was void. The Supreme Court held that the Board of Supervisors had no authority to compromise the tax and granted the writ (*Territory* v. *Gaines*, 11 Arizona, 270), in pursuance of which the present action was instituted.

The uncontradicted testimony showed that the raise in the assessment of the eight claims was not based upon evidence as to value and that it was in fact arbitrary, and also that some of the claims were assessed far in excess of their full cash value. The duplicate assessment roll made out by the assessor contained the increase made by the Board of Equalization, the eight claims which were raised being separately itemized by name, with the amounts of the respective increases set opposite the names, but with no statement of their original valuation or the total valuation of them or any of them.

On the third Monday of December, 1901, the tax being unpaid, the tax collector turned in the delinquent list, certified by the Board, giving the property of the defendant as shown in the assessment returned by the appellee, with the increases as they appeared on the duplicate assessment roll.

Under the 1903 law delinquent property was carried

into the back-tax book of that year, and this suit was brought to foreclose the Territory's lien upon the pieces of property therein appearing. That book, which was put in evidence, gave the appellee's property, its total valuation, total tax, amount paid on account and balance due. In enumerating the several tracts remaining unredeemed it showed sixty-five mining claims, containing 636 acres, valued *en masse*, at $3,180 with improvements at $55,431, and named sixty-four claims; the number of acres, and all other valuations for real estate and improvements were the same as in the other lists; and the list of increased valuations of the several claims and improvements were shown, but no total valuation of such separate pieces of property after the addition of the increase was given.

The discrepancies in description of the claims between the complaint and the tax documents are stated, and mention is made that in none of the latter is the total assessed valuation of any individual piece of real estate or the amount of taxes due on any of the separate claims disclosed. And it is said that the testimony of the assessor showed that there were 280 patented mining claims in Cochise County at the time the 1901 assessment was made, and that they were and had been assessed at a uniform rate of $5.00 per acre as a rule.

In its opinion the Supreme Court stated that the most important question raised upon the record was the validity of the action of the Board of Supervisors, sitting as a Board of Equalization, in raising the assessment upon eight of the group of sixty-five claims originally assessed *en masse*. After stating the minutes of the Board's action the court quotes § 2654 of the Revised Statutes of 1887 (p. 209):

". . . The board of equalization shall have power to determine whether the assessed value of any property is too small or too great, and may change and correct any valuation, either by adding thereto or deducting there-

from, if the sum fixed in the assessment-roll be too small or too great, whether said sum was fixed by the owner or the assessor; . . . and the clerk of the board of equalization shall note upon the assessment-roll all changes made by the board; During the session of the board of equalization the assessor shall be present, and also any deputy whose testimony may be required by the parties appealing to the board, and they shall have the right to make any statement touching such assessment, and producing evidence relating to questions before the board, and the board of equalization shall make use of all other information that they can gain otherwise, in equalizing the assessment-roll of the county, and may require the assessor to enter upon such assessment-roll any other property, which has not been assessed; and the assessment and equalization so made shall have the same force and effect as if made by the assessor before the delivery of the assessment-roll to (by) him by (to) the clerk of the board of equalization. . . ."

The court said (p. 212):

"It is apparent from an examination of this roll [the duplicate assessment roll] that there are in effect two assessments for the same year against each of the eight claims raised. One, an assessment, commingles with that of sixty-four other claims, *en bloc;* the other, separate and distinct. This is no mere irregularity. The legality of the original assessment as an entirety has been sustained solely upon the ground that the property was so returned by the taxpayer. The board disregarded such return, and the validity of its action must be determined under the statute alone. It might be argued successfully that had the board of supervisors raised the assessment upon the group, such a raise would have been valid. But the board segregated from the group certain claims, and imposed thereon an additional assessment. It is a fundamental rule of taxation in this territory that a taxpayer may pay

upon any one of parcels separately assessed, discharging the lien thereon, without paying upon the remainder. Rev. Stats., 1887, par. 2676.

\*  \*  \*  \*  \*  \*  \*  \*

"By the action of which complaint is made here, the board deprived the appellee of this right. Upon the raise being made it had the legal right to determine upon which, if any, of the claims so raised it would pay. If it determined to pay upon none, it was nevertheless obliged to pay a portion of the tax thereon if it exercised its right to pay upon the fifty-seven claims remaining, for the tax collector, under paragraph 2676, *supra* (reënacted, paragraph 3900, Revised Statutes of 1901), could not receive the tax upon less than the entire sixty-five claims, that being the least subdivision appearing on the assessment-roll. If it determined to pay upon one or more of the eight so raised, and to abandon the remainder, it would have to pay the tax upon the raise, together with the tax upon the entire sixty-five claims as originally assessed. The undisputed testimony discloses that these claims were noncontiguous, in instances which would have invalidated an original assessment, except for the return. The board in raising this assessment disregarded the original classification, which has been held good as against the appellee solely by reason of its return. The board of supervisors, sitting as a board of equalization, had no power under paragraph 2654 of the Revised Statutes of 1887 to segregate, from a tract of land returned and assessed as one parcel, a portion thereof and impose thereon an additional assessment, without first determining that such tract was improperly assessed as a whole, and causing such tract to be re-assessed and raised in subdivisions in such manner as to preserve the right of the taxpayer to discharge the lien of taxes upon such of the several separate tracts as he might elect."

It is evident that in reaching this conclusion the Su-

preme Court based its decision upon its construction of the statute in this respect. In exercising appellate jurisdiction over the territorial courts, where the construction placed upon a statute of the Territory by the highest court thereof is brought in question, this court has frequently held that it will not reverse the action of the territorial court except in cases where manifest error in such construction appears. *Straus* v. *Foxworth,* 231 U. S. 162; *Phœnix Railway Co.* v. *Landis,* 231 U. S. 578; *Work* v. *United Globe Mines,* 231 U. S. 595. Applying this rule we are not prepared to say that there was manifest error in the conclusion reached by the Supreme Court in construing the statute. Indeed, the appellant in its brief filed in this case extracts from its motion for rehearing in the court below and prints as a part of its argument a statement to the effect that it is convinced that the board could not lawfully segregate the eight claims from the mass and raise the valuation separately, there being no separate assessment originally; but it contends that the value of the whole tract is equal to all its parts, so that when the value of a part is raised it merely increases the aggregate value of the whole tract. We are not prepared to say that the Arizona Supreme Court erred in its conclusion concerning what the Board actually did. The original assessment as the finding shows, contains a return of sixty-five mining claims, naming them as 636 acres of land. There was no separate statement of the amount of acreage in any one claim. The claims were not described except by name, and that as a part of the 636 acres returned as a whole. The Supreme Court found, and we think correctly, that the reassessment picked out eight claims by name and raised the valuation of each by a given sum.

It is further contended by the appellant that certain things have happened as set forth in the findings which amount to an estoppel upon the appellee from denying

the right to have a lien charged, as claimed in this proceeding, upon specific property and to have the lien enforced by the sale of the specific lot or tract covered by it.  The statute (part of which is quoted' in the margin [1]) is a peculiar one and is said to have been adopted from the statutes of Missouri.  It provides for a civil action against the owners of the property, to the end that a lien be charged upon land the taxes on which have become delinquent and that such lien be foreclosed.  In Missouri it has been decided that no personal judgment shall be rendered in the proceedings against the owner of the property, nor any execution issue except upon the property charged with the tax.  *State ex rel. Rosenblatt* v. *Sargeant*, 76 Missouri, 557; *State ex rel. Hayes* v. *Snyder*, 139 Missouri, 549. And the Supreme Court of the Territory of Arizona held that the construction of the statute by the court of last resort of Missouri was binding upon it.

In such a proceeding it is difficult to see how the principles of estoppel because of the description of the land made by the owner in returning the property or the payment of taxes, as appears from the finding in this case, could have application.  Estoppel ordinarily proceeds upon principles which prevent one from denying the truth of statements upon which others have acted where the denial would have the effect to mislead them to their prejudice.  In this case the Territory is undertaking to

---

[1] The judgment, if against the defendant, shall describe the land upon which the taxes are found to be due, shall state the amount of taxes and interest found to be due upon each tract or lot, and the year or years for which the same are due, up to the rendition thereof, and shall decree that the lien of the Territory be enforced, and that the real estate, or so much thereof as may be necessary to satisfy such judgment, interest and costs, be sold, and execution shall be issued thereon, which shall be executed as in other cases of judgment and execution, and said judgment shall be a first lien upon said land. Laws of 1903, pp. 148, 153, Act No. 92, § 88.

collect its revenues by certain statutory proceedings duly provided for that purpose, and it would seem to be elementary that such enforcement of collection must depend upon a valid assessment as its basis, and this again was the holding in Missouri. *City of Hannibal ex rel. Bassen* v. *Bowman,* 98 Mo. App. 103; *State ex rel. Morris* v. *Cunningham,* 153 Missouri, 642. The fact that the taxpayer furnished the list of mining claims which included those upon which increased assessments had been made and thereby acknowledged the ownership of the property by the description stated, would not permit the Board, if authority was wanting, to increase the assessment upon a part of the property by picking out certain claims only, as was done in this case. If for such action the assessment was void, the description furnished by the property owner could not supply the defect. *State ex rel. Flentge* v. *Burrough,* 174 Missouri, 700, 707. Nor do we think there is substance in the claim that the payment made by the appellee estopped it from contesting the lien sought to be imposed in this case. The finding of facts sets forth specifically the payment of the sum of $14,133.12 and of the further sum of $9,589.20 as a condition for granting the injunction in the original suit brought by the appellee in the District Court; and the finding shows that the payment of the sum of $14,133.12 was "on account of any moneys which might ultimately be determined as due from said company for its tax for said year," and that the sum of $5,661.44 was paid on the attempted compromise which was subsequently held to be invalid. We do not find anything in these payments which upon principles of estoppel, or as an affirmation of the validity of the assessment, would prevent the appellee from contending against the legality of the action here in question

In the decision as made in the Supreme Court it was not found necessary to rule upon the attempted defenses based upon the arbitrary character of the assessment, nor

the fact that it was in excess of the cash value of the property. The conclusion which we have reached renders it unnecessary for us to pass upon the findings in this respect, which, notwithstanding the decision in the court below, are placed in the special findings upon which the case is sent here.

Nor do we need to pass upon the alleged violation of the equality protection of the Constitution in the finding that other patented mining claims in Cochise County at the time of the assessment in 1901 were assessed as a rule at the uniform rate of $5.00 per acre. Nor need we consider the ground upon which the Supreme Court of Arizona seems to have acted in part that the assessment rolls and tax book varied from the complaint in the description of the property.

*It follows that the judgment of the Supreme Court of the Territory of Arizona must be affirmed.*