**UNITED STATES, to Use of NOLAND CO., Inc., v. MARYLAND CASUALTY CO. et al.**

Civil Action No. 902.

District Court, D. Maryland.

April 25, 1941.

280

O. Bowie Duckett, Jr. (of Hargest, LeViness, Duckett & McGlannan), of Baltimore, Md., and Alexander M. Heron, of Washington, D. C., for plaintiff.

Benj. H. McKindless and W. Hamilton Whiteford, both of Baltimore, Md., and Edward Gallagher, of Washington, D. C., for defendants.

CHESNUT, District Judge.

This is a suit under the so-called Miller Act which, by the Act of Congress of August 24, 1935, c. 642, §§ 1 and 2, 40 U.S.C. A. §§ 270a and 270b, superseded the Heard Act, 40 U.S.C.A. § 270. The suit is brought for the use of the Noland Company, Inc., a Virginia corporation, which furnished materials to a sub-contractor, the Irving J. Gluck Co. The principal contractor was the Consolidated Engineering Company, Inc., of Baltimore City, a Maryland corporation, which gave a "payment bond" as required by the Miller Act, with the Maryland Casualty Company as surety. The principal contractor and surety are defendants in this case. The amount claimed by the Noland Co., in the suit was $35,216.59. There are no procedural questions in the case, due notice having been given by the Noland Company to the principal contractor, and the suit having been brought in due time under the statute. Fleisher Engineering & Const. Co. v. United States, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. ——.

From the evidence in the case I find the following facts:

### Findings of Fact

1. On August 13, 1938 the Government entered into a contract with the Consoli-dated Engineering Company for the construction of fourteen (14) apartment houses at the Naval Academy, Annapolis, Maryland, for a total payment of $1,100,-825, to be made to the contractor. The work was wholly completed and final settlement with the Government was made on November 10, 1939.

2. On September 9, 1938 the principal contractor (hereinafter called the "Consolidated") made a sub-contract with the Irving J. Gluck Company, for plumbing and heating work for $125,840. The Gluck Company was a large contractor or sub-contractor for work and materials for plumbing and heating, and during the performance of the work for the Naval Academy in Annapolis, was also doing plumbing and heating work for about 12 other substantial jobs. It obtained the material for these jobs from the Noland Company with which it had been dealing for some time past. As of August 24, 1939, it owed the Noland Company for materials purchased for many of these jobs, $84,526.94; and by a statement of that date showed an alleged balance due the Gluck Company from the general contractors, $331,935.42. The Gluck Company was apparently too greatly extended in its operations for its working capital. In October 1940 it went into bankruptcy in the northern district of Illinois.

3. A few days before the Gluck Company made its sub-contract with the Consolidated for the plumbing and heating work, it obtained a short term loan of $15,000 from the Noland Company; and again in December 1938 and January 1939, obtained further temporary loans from the Noland Company in the amounts of $10,000 and $8,400. The evidence does not show that these loans were made with any particular relation to the sub-contract between the Gluck Company and the Consolidated.

4. The sub-contract between Gluck and the Consolidated was on a standard printed form of building contract, Article 14, paragraph 1 of which, provided that Gluck, as sub-contractor, should waive and release all liens arising from the work; and should also furnish waivers of liens from others supplying labor and materials for the premises. The second paragraph provided as follows:

"At the request of the Contractor, the Sub-contractor must produce receipted bill covering materials furnished during

the preceding month, for which allowance in payment has been made on the monthly requisition by the Contractor to the Sub-contractor. If there is any evidence that the Sub-contractor is not paying his obligations in accordance with monthly payments made to him by the Contractor, then the Contractor reserves the right to withhold further payments until such time as the Sub-contractor furnishes proper receipted bills indicating that he is making payments for labor and material in accordance with the payments which he has received from the Contractor."

5. In accordance with this provision the customary business routine between Gluck and the Consolidated was that about the first of each month Gluck furnished a certificate of the total amount of work and materials which had been finished on the job up to *the end* of the preceding month, as approved by the architect or engineer. From this amount the Consolidated deducted 10% to be retained, and also deducted all previous payments and credits, and then paid the balance. The Consolidated, however, contemporaneously required Gluck to furnish an affidavit that it had paid for all labor and materials furnished or performed on the job up to the *first* day of the *preceding month;* and also required certificates from various persons furnishing materials to Gluck that they had been fully paid for materials supplied by them to Gluck for the job up to the *first of the month* preceding the particular requisition then made by Gluck on the Consolidated. The Noland Company furnished such certificates monthly up to and including May 31, 1939.

6. Particular importance is attached to the certificate furnished by Noland, dated July 5, 1939, (Defendants' Exhibit No. 3). This recited as follows:

"We hereby certify that we have been paid in full for labor and/or materials furnished and delivered to Irving J. Gluck, Inc., from the beginning of the job up to and including May 31, 1939, in the performance of their sub-contract in the erection of 14 apartment building, Annapolis, Maryland. We further certify that we have paid in full for all materials purchased by us and that the cost, freight charges incurred in the transportation and delivery of such materials to Annapolis, Maryland, and/or to the site of the said operation have been fully paid.

"(Signed) Noland Co., Inc.,
"By ———— Allen, Asst. Sec'y."

This certificate was delivered to Gluck by Noland and attached to the requisition made by Gluck on Consolidated dated July 3, 1939. The related voucher showed:

"Total requisition as approved by architect or engineer to June 30, 1939...... $110,353.

Less:

| | | |
|---|---|---|
| 10% retained ................. | $11,035.30 | |
| Previous payments and bills rendered ................... | 80,091.00 | 91,126.30 |

19,226.70"

Gluck also submitted to Consolidated the customary affidavit that it had paid for all labor and materials up to May 31, 1939. On the faith of these papers, including particularly the Noland certificate, the Consolidated on July 15, 1939 paid the sum of $19,226.70 to Gluck. The Consolidated would not have made this payment if it had not been furnished the certificate from Noland reciting full payment to the latter up to May 31, 1939.

7. The certificate was not true in that when it was given, Noland had not been paid by Gluck for any material furnished during May 1939, although Gluck had paid Noland for material furnished up to May 1, 1939. Allen, acting for Noland, knew that payment had not been made for the May materials supplied, and gave the certificate as an accommodation to Gluck who promised promptly to give Noland a short term twenty-day note for all materials furnished by Noland to Gluck during May 1939, including materials for various jobs in addition to the work for the Naval Academy. The note for $35,-000 was not finally actually delivered until about August 5, 1939, and was renewed on August 25, 1939 for thirty days, and has not been paid. The value of the materials furnished by Noland during May 1939 for the Naval Academy work was $5829.82.

8. On several monthly occasions prior to July 1939, Gluck had requested Allen, acting for Noland, for similar certificates reciting full payment for materials for the Naval Academy and some other jobs up to the first of the preceding month, although payment in cash had not been made, and Allen had given the certificates, taking contemporaneously short term notes from Gluck which, it appeared, had all been

paid on or before July 5, 1939. Allen knew the purpose for which the certificates were being requested by Gluck, that is, to obtain payments of monthly requisitions from Consolidated. The amount of $19,226.70 paid by Consolidated to Gluck on July 15, 1939, was for labor and materials furnished on the work by Gluck during June 1929, Gluck having been previously paid by Consolidated for the May 1939 work and materials.

9. With a minor exception ($203.19 for insurance premium) Consolidated made no further payments to Gluck after July 15, 1939. Nevertheless Gluck finished the whole of his sub-contract and the work was accepted by the Consolidated and by the Government. The balance due from Consolidated to Gluck on account of the whole sub-contract still retained by Consolidated is $26,309.21. And the amount due from Gluck to Noland for the Naval Academy job is the sum claimed in the complaint, $35,216.59.

10. No other claims against the payment bond have been filed in this case and the time for filing same has now expired. There is no evidence in the case legally sufficient to show any indebtedness, actual or prospective, of the Consolidated to any persons other than Noland Company on account of the sub-contract with Gluck.

11. There was an open account kept by Noland on its books with Gluck which did not segregate charges and credits in the account between them with respect to the several particular jobs for which Noland was furnishing material to Gluck, until after May 1939. There were no specific written contracts between Noland and Gluck; but simply orders given and accepted for material on the basis of payment on the terms of 2% discount if bills were paid within 10 days, or net thirty days. No extended credits were given by Noland to Gluck other than the short term notes above mentioned. It is not unusual for material men such as Noland, having the relation that it did with Gluck, to accommodate them from time to time with loans of money. The defendants in this case have not shown that the loans above referred to made by Noland to Gluck were repaid by Gluck out of moneys paid to Gluck by Consolidated. The Noland Company is a large dealer in plumbing supplies and materials, having several thousand separate accounts widely distributed, and doing a gross business of about $20,000,000

a year. It is not uncommon for it to be unable to collect from its customers on the thirty day basis.

12. The evidence does not show that Noland became aware of the Gluck Company's insolvency at least until during September 1939 when Mr. Noland, the president of the Noland Company, had a conference in Washington with Mr. Gluck, at which time Noland said that he felt satisfied that Gluck's financial difficulty was due to lack of adequate capital for the amount of business he was doing. Some time after July 5, 1939, Noland's books kept the Gluck account for the Naval Academy business separate from other transactions. The evidence does not affirmatively show that any moneys received by Gluck from Consolidated were paid by Gluck to Noland and credited by Noland to other items of indebtedness than material supplied for the Annapolis job; and if any such payments were so otherwise applied, there is no evidence to show that the Noland Company knew the particular source of the payments.

### Conclusion of Law

The conclusion of law is that the use plaintiff, the Noland Company, is entitled to recover judgment in this case against the defendants, on the payment bond, in the amount of $29,386.77 ($35,216.59 less $5,829.82) without interest.

### Opinion

 On these facts the defendants make first the broad contention that there is no liability at all on the payment bond. In support of this contention they seek to deduce the conclusion from the facts that Noland was not acting in good faith and fairly with the surety on the bond, in that it was generally financing Gluck; had improperly applied sums obtained by Gluck from Consolidated, to indebtedness of Gluck to Noland other than on account of materials furnished to Consolidated; had accepted notes in payment instead of insisting on cash payments; and had given false certificates of payment up to certain dates. See American Bonding Co. v. United States, 3 Cir., 233 F. 364; Equitable Surety Co. v. Board of Commissioners, 5 Cir., 231 F. 33; United States v. American Bonding & Trust Company, C.C. Md., 89 F. 921, affirmed 4 Cir., 89 F. 925; (Cf. Guaranty Co. v. Pressed Brick Co., 191 U.S. 416, 24 S.Ct. 142, 48 L.Ed. 242); Kansas City Marble Co. v. Penker Const. Co., 4 Cir., 86 F.2d 287; United States,

for Use and Benefit of Noland Co. v. Wood, 4 Cir., 99 F.2d 80; United States v. Johnson, Smathers & Rollins, 4 Cir., 67 F.2d 121; Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 151, 130 A.L.R. 192. See also generally Stearns on the Law of Suretyship, 4th Ed. s. 76(a). With respect to this broad defense it is sufficient to say that the facts in this case do not justify the application of the principles outlined in some of the cases cited which, under their particular facts, were sufficient to discharge the principal contractor or surety on the bond from liability. Here there was no general course of unfair dealing between Noland and the Consolidated, with the exception of the improper certificate of July 5, 1939, which will be more fully discussed later. And there is no evidence of misapplication by Noland of payments by Gluck from moneys received from the Consolidated. Particularly the evidence does not show that Consolidated's money was used by Gluck to repay its notes for money borrowed from Noland. And it is not perceived how the fact that Noland continued to supply materials to Gluck on orders previously accepted, even after it obtained information as to Gluck's possible precarious financial conditions, without extending any unusual credit therefor, could of itself discharge the defendants in this case from liability on their bond for materials actually supplied at reasonable prices and used in the work.

There is, however, a very different question arising on the effect of the false certificate of July 5, 1939. Counsel for the Noland Company now concede that, in view of this certificate, which recited full payment to Noland up to May 31, 1939, the Noland Company is not entitled to recover for those items of material supplied during May 1939 and included in its bill of particulars in the whole amount of $35,216.59. As the May materials included in the bill of particulars (attached to the complaint) amounted to $5829.82, it is conceded that that amount must be deducted from the use plaintiff's claim.

Counsel for the defendants, however, contend that a much larger sum should be deducted. They say that except for this certificate the Consolidated would not have made any payment to Gluck, and therefore the whole of the amount so paid, $19,226.70, should be deducted from the plaintiff's claim; or, in the alternative, they contend that at least so much of the $19,226.70 should be deducted as will re-duce the plaintiff's claim to the amount of $26,309.21 still retained by the Consolidated, so that the latter will not suffer any loss by reason of having made the payment. There are thus three possible views as to the effect of this false certificate: (1) That $5829.82 should be deducted from the plaintiff's claim; (2) that the whole of the plaintiff's claim should be reduced to $26,309.21; and (3) that the plaintiff's claim should be reduced by $19,226.70.

I find no adequate basis for the defendants' contention that the whole $19,226.70 should be deducted from the plaintiff's claim of $35,216.59. The effect of this would be to reduce the plaintiff's recovery to $15,989.89, leaving a balance of $10,319.92 in the hands of the Consolidated which would presumably be payable to the trustee in bankruptcy of the Gluck Company, who has not filed any claim in this case or otherwise made demand on the bond for any part of the balance still retained by the Consolidated; and who would not seem to be equitably entitled to it as against the Noland Company. The contention that the plaintiff's claim should be reduced to an amount not greater than the sum still retained by the Consolidated ($26,309.21) has more plausibility; but after some extended consideration I have concluded that the only legal effect of the erroneous certificate of July 5, 1939 is to hold the Noland Company to the *truth of the statement as made,* that is to say, to eliminate from its claim, recovery for any items of material furnished during May 1939, and therefore to deduct $5829.82 from its claim of $35,216.59. Under the circumstances the giving of this certificate by Allen for the Noland Company was not commendable and was hardly consistent with good ethics in business practice; but on the other hand, there were no direct relations between Noland and the Consolidated, and such indirect relations as they had were not of a fiduciary nature. The circumstances were not such that the certificate should be interpreted as an attempt to knowingly create a false credit for the Gluck Company, and I do not find from the evidence that the Consolidated was occasioned damage or loss by the certificate beyond the value of the materials supplied during May 1939. That is to say, under the course of business between Consolidated and Gluck, the former relied upon the certificate only to show that Noland had been paid up to and including May 31, 1939. There was always a month's

hiatus between the dates covered by Noland's certificates and the amount of work for which Gluck was making requisition upon the Consolidated. Apparently the 10% retained percentage was regarded by Consolidated as sufficient to protect it against possible claims for materials supplied to the sub-contractor during the month prior to the particular payment. If Gluck had borrowed elsewhere $5829.82 and paid it to Noland for the May materials, the certificate would have been correct, and the Consolidated would have made the payment of $19,226.70 without other change in the situation of the several parties. In substance, what occurred was that Noland acknowledged payment up to May 31, 1939 on the promise of Gluck to give a short term note which would include all sums due to Noland for materials on all of Gluck's jobs during May 1939. While the giving of a note in payment of a debt does not ordinarily of itself alone constitute payment, the situation here was such that it must be held to have constituted payment for the May 1939 materials, as between Noland and Consolidated. The evidence does not show that in giving the certificate Noland knew what sum of money would then become payable from Consolidated to Noland, or that the certificate was given for the purpose of enabling Gluck to accomplish anything beyond what it would be entitled to if it had theretofore actually paid for its May account with Noland. In other words, the certificate was merely a receipted bill up to May 31, 1939. It does not appear that it had any effect beyond this in influencing the action of the Consolidated.

■ I have not been able to find any legal principle applicable to the certificate except that of *estoppel* which it is said in Arizona v. Copper Queen Mining Co. 233 U.S. 87, 95, 34 S.Ct. 546, 549, 58 L.Ed. 863: "ordinarily proceeds upon principles which prevent one from *denying the truth* of statements upon which others have acted, where the denial would have the effect to mislead them to their prejudice." (Italics supplied) See also United States v. Wood, 4 Cir., 99 F.2d 80.

■ Estoppel is a shield for defense but not a weapon of attack. Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618. It is a rule of evidence which precludes a person from denying the truth of some statement previously made by him. It is not the basis of an affirmative action. Low v. Bouverie, [1891] 3 Ch. 105.

■ It is suggested that the acts by Noland in giving the monthly certificates reciting payment, and particularly that of July 5, 1939, constituted material misrepresentations, on the faith of which Consolidated paid out $19,226.70, and has been damaged thereby to the extent of any sum it must now pay to Noland over and above the amount still retained by it, $26,-309.21. The second amended answer of the defendants does not set up such a defense, and, although permission was given at the trial for a further amendment of the answer, if needed to present the defense of estoppel, no further amendment has actually been made. If the certificates are to be treated as misrepresentations, they would seem to be an *equitable estoppel by misrepresentation* (21 C.J. 1113), and it still results that the only consequence is to protect the Consolidated against the loss actually occasioned thereby. 21 C.J. 1202, s. 203d; Campbell v. Nichols, 33 N. J.L. 81. It seems improper to hold Noland liable for the consequences of a broader statement than it actually made. The loss to Consolidated by a now required payment to Noland above $26,309.21 is due to the fact that Gluck did not pay Noland for the materials in June 1939; but the certificate made no representation as to that. The position now taken by counsel for Consolidated is in effect that the certificate of July 5, 1939 was a representation that the money to be paid by Consolidated to Gluck on the faith of the certificate *would be applied* by Gluck to the payment of Noland's bills for June deliveries. The certificate certainly did not expressly say anything to this effect, and it cannot be reasonably implied from the previous conduct of the parties.

■ The plaintiff has asked that interest be allowed on the principal amount of its claim, but its counsel has conceded that the allowance, in the particular case, is discretionary and not mandatory, although it is true that frequently interest is allowed in these suits under the Miller Act, 40 U.S.C.A. § 270a et seq. United States v. McCay, D.C.Md., 28 F.2d 777, 781; United States v. Fleischmann Const. Co., D.C.Va., 298 F. 320, affirmed 4 Cir., 298 F. 330 and 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624. There are decisions to the effect that the allowance of interest in these cases is to be governed by the law of the

state where the contract was made and the work was to be performed. Illinois Surety Co. v. Davis Co., 224 U.S. 376, 381, 37 S. Ct. 614, 61 L.Ed. 1206; Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 151, 154, 130 A.L.R. 192; United States v. Mittry Bros. Const. Co., D.C. Idaho, 4 F.Supp. 216, 219, affirmed, 9 Cir., 75 F.2d 79. I understand it is conceded by counsel for the use plaintiff that the allowance of interest in a case of this kind is, by the Maryland law, discretionary with the jury or court. Baltimore City Pass. Ry. Co. v. Sewell, 37 Md. 443, 452; Shoop v. Fidelity & Deposit Co. of Maryland, 124 Md. 130, 139, 91 A. 753, Ann.Cas.1916D, 954. At the most, interest in this case could not fairly be allowed prior to the filing of suit. United States v. McCay, and United States v. Mittry Bros. Const. Co., supra. But when suit was filed the amount of the use plaintiff's claim was not admitted but was in dispute and has been successfully resisted to the extent of nearly $6,000 by the defendants. This with other features of the case above reviewed seems to reasonably call for the disallowance of interest in this particular case.

### Order for Judgment

The clerk is, therefore, directed to enter judgment for the United States to the use of the Noland Company in the amount of $29,386.77.