James C. ROGERS, Respondent,

v.

Guy A. THOMPSON, Trustee, Missouri Pacific Railroad Company, a Corporation, Appellant.

No. 44595.

Supreme Court of Missouri, Division No. 1.

Jan. 16, 1958.

to make a submissible case, that the trial court erred in giving instruction 1, and that the verdict and judgment were excessive. In November 1955, this Court held that Rogers failed to make a submissible case and reversed the judgment of the trial court. Rogers v. Thompson, Mo., 284 S.W. 2d 467. We did not consider, pass upon, or dispose of defendant's contentions that instruction 1 was erroneous or that the judgment was excessive. Rogers v. Thompson, supra.

In February 1956, the United States Supreme Court granted certiorari, Rogers v. Thompson, 350 U.S. 964, 76 S.Ct. 440, 100 L.Ed. 837, and in April 1956 entered an order substituting the Missouri Pacific Railroad Company for Thompson, trustee, Rogers v. Thompson, 350 U.S. 1004, 76 S.Ct. 649, 100 L.Ed. 866. On February 25, 1957, the United States Supreme Court rendered its opinion, reversing the judgment of the Supreme Court of Missouri for the stated reason that our opinion erroneously held that Rogers had failed to make a submissible case and thereby erroneously denied Rogers' right to a jury determination as to whether the railroad was negligent, and, if so, whether that negligence played any part in producing plaintiff's injury. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 524, 77 S.Ct. 443, 459, 1 L.Ed.2d 493, 515. A petition for rehearing was denied on April 22, 1957, 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed. 2d 764. After the United States Supreme Court had disposed of the submissibility question, the final paragraphs of its opinion were (352 U.S. 511, 77 S.Ct. 451, 1 L. Ed.2d 502):

"We have considered the remaining questions not passed upon by the Supreme Court of Missouri, and find them to be unsubstantial. Accordingly, we remand the case for proceedings not inconsistent with this opinion.

"The judgment is

"Reversed."

Harold L. Harvey, Oliver L. Salter and Donald B. Sommers, Marvin Boisseau, Jr., St. Louis, for appellant.

Mark D. Eagleton, Thomas F. Eagleton, and Leland Jones, Eugene K. Buckley, St. Louis, for respondent.

COIL, Commissioner.

James C. Rogers brought an action against Guy A. Thompson as trustee of the Missouri Pacific Railroad Company, a corporation, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., claiming damages for personal injuries. Judgment for $40,000 was entered on a jury's verdict. The trustee appealed to this Court, contending that plaintiff below failed

. The mandate of that Court, dated April 26, 1957, filed in this Court April 29, 1957, advised us that our judgment had been reversed with costs, ordered that Rogers recover from the railroad $708.57 for his costs in the certiorari proceeding, and ordered further "that this cause be, and the same is hereby, remanded to the Supreme Court of Missouri for proceedings not inconsistent with the opinion of this Court."

Because we were doubtful as to what "proceedings" to take to comply with the mandate's direction to take "proceedings not inconsistent with" the opinion of the United States Supreme Court, and because of our desire to, and in recognition of our duty to, respect that Court's mandate and, therefore, not "reconsider questions which the mandate * * * laid at rest," but also believing that a serious question remained as to "what issues were laid at rest" by the mandate, Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 140, 60 S.Ct. 437, 84 L.Ed. 656, 661, we ordered that the case again .be set at the September Session, 1957, for the purpose of receiving the advisory views of counsel as to what "proceedings" we should next take. And, as may well have been forecast, Rogers contended that the only way we could comply with the mandate was to forthwith affirm the judgment of the trial court, while the railroad contended that we were not foreclosed by the opinion and mandate from considering and disposing of its original contentions as to the instruction and judgment.

For the reasons which will appear, we are of the opinion that to take "proceedings not inconsistent with the opinion of" the United States Supreme Court and thus to comply with its mandate, we are precluded from ruling railroad's contentions as to instruction 1, but that we are not precluded from ruling and, therefore, we do rule the question of excessiveness of verdict and judgment.

█ While the ambiguity [1] of and various meanings of this language of the United States Supreme Court have been suggested, "We have considered the remaining questions not passed upon by the Supreme Court of Missouri, and find them to be unsubstantial," we think that language meant that the United States Supreme Court had passed on the railroad's contentions that instruction 1 was erroneous and that the verdict and judgment were excessive, and had decided that there was no merit in either of them. We therefore seek the effect on our "proceedings" of that Court's finding that those two questions were "unsubstantial."

The United States Supreme Court has invariably held that, as to cases which reach it from other courts in the Federal Judicial System, it is a court of general review; but that as to cases which reach it from a state court, its scope of review is limited to ruling the state court's judgment on federal questions of substance. In Seaboard Air Line Ry. v. Duvall, 225 U.S. 477, 32 S.Ct. 790, 56 L.Ed. 1171, it was said, "This case does not come here from a Federal court, and we are therefore not a court of general review." 225 U.S. 485, 32 S.Ct. 792. And in German Savings & Loan Society v. Dormitzer, 192 U.S. 125, 24 S.Ct. 221, 48 L.Ed. 373, a case in the United States Supreme Court on writ of error to the Supreme Court of Washington, Mr. Justice Holmes said, "Hill v. Mendenhall, 21 Wall. 453, 22 L.Ed. 616, relied on by the plaintiff in error, came from the circuit court of the United States, and when a case properly is brought here from the circuit court upon constitutional grounds the whole case is open. Horner v. United States, 143 U.S.

---

1. It has been suggested, for example, that the Supreme Court did not, as it could and would have done had it intended to finally rule the questions not ruled by the Missouri Supreme Court, direct that the judgment on the verdict be re-

instated as in Urie v. Thompson, 337 U.S. 163, 196, 69 S.Ct. 1018, 93 L.Ed. 1282, or spell out a specific direction as in Stinson v. Atlantic Coast Line R. Co., 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed. 93.

570, 12 S.Ct. 522, 36 L.Ed 266. But it is otherwise when a case comes, as this does, from a state court." 192 U.S. 127, 24 S.Ct. 222. See also Central Vermont Ry. Co. v. White, 238 U.S. 507, 508, 515, 35 S.Ct. 865, 59 L.Ed. 1433, 1435, 1438; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 679, 50 S.Ct. 451, 74 L.Ed. 1107, 1113; and Note in 63 L.R.A. 572, where the annotator states the general rule: "From the beginning the Federal Supreme Court has uniformly been of the opinion that on writs of error to state courts the scope of its review was restricted to the correction of errors committed by those courts in the decision of Federal questions."

The Supreme Court of the United States has said, in a case on writ of error to the Supreme Court of California, that it could look beyond the federal question only when that question had been decided erroneously and then only to determine whether there were other matters "adjudged by the state court sufficiently broad to maintain the judgment, notwithstanding the error in the decision of the federal question. Murdock v. City of Memphis, 20 Wall. 590, 591, 22 L.Ed. 429." McLaughlin v. Fowler, 154 U.S. 663, 14 S.Ct. 1192, 1193, 26 L.Ed. 176.

And the fact that the instant case was brought under the FELA did not of itself give the United States Supreme Court any jurisdiction to review this Court's judgment beyond or in addition to the jurisdiction conferred by 28 U.S.C.A. § 1257(3). See Seaboard Air Line Ry. v. Duvall, supra. And note United States Supreme Court Rule 19, 28 U.S.C.A., which provides in applicable parts:

"1. A review on writ of certiorari is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered:

"(a) Where a state court has decided a federal question of substance not theretofore determined by this court, or has decided it in a way probably not in accord with applicable decisions of this court."

It would appear to follow that as to cases reaching the United States Supreme Court from the various federal courts, the Supreme Court has the power of general review and thus jurisdiction to decide questions left undecided by those federal courts, and that, irrespective of the nature of those questions. See dissenting opinion in Cahill v. New York, N. H. & H. R. Co., 351 U.S. 183, 184, 187–190, 76 S.Ct. 758, 100 L.Ed. 1075, 1077, 1079, 1080, and the cases there cited in footnote 4, and note the conclusion there reached based upon the cited cases (all of which were cases which had reached the United States Supreme Court from federal courts) that "At least where there are *unsubstantial* points left undecided below this Court should not remand the case for consideration of those points." (Our italics.) 351 U.S. 189, 76 S.Ct. 762, 100 L.Ed. 1080. And see Webb v. Illinois Central Railroad Co., 352 U.S. 512, 513, 77 S.Ct. 451, 452, 1 L.Ed. 2d 503, 505, wherein the opinion was written by the writer of the Rogers opinion and handed down the same day. The Webb case reached the Supreme Court from the United States Court of Appeals for the Seventh Circuit. 228 F.2d 257. There the Supreme Court used language almost identical to that used in the Rogers case, viz., "We have considered the remaining questions, not passed upon by the Court of Appeals, and find them to be unsubstantial. Accordingly, we remand the case for proceedings in conformity with this opinion." 352 U.S. 517, 77 S.Ct. 455. But in so ordering in that case, the United States Supreme Court was acting in the capacity of a court of general review. A like order, however, even as to a decision that questions are "unsubstantial," can have no decisive effect upon nonfederal questions left undecided by a state court. (Cases heretofore cited.)

It seems, then, that the effect of the United States Supreme Court's having de-

termined that certain questions raised in but not passed on by the Missouri Supreme Court were unsubstantial would depend upon whether those questions were federal questions, that is, whether they involved Rogers' substantive rights claimed under the Federal Act, or whether they were questions exclusively for consideration and disposition by the Supreme Court of Missouri.

■ Defendant railroad claimed, inter alia, in its original brief in this Court that instruction 1 was erroneous because it failed to hypothesize for a jury finding certain facts or elements essential to plaintiff's recovery, viz., that there was or should have been a walkway across the culvert and that defendant had actual or constructive knowledge as to plaintiff's being endangered from fire under the other hypothesized circumstances. We have held heretofore that the form of an instruction, viz., the manner in which substantive law is submitted to a jury is a procedural matter. Reimers v. Frank B. Connet Lumber Co., Mo., 271 S.W.2d 46, 51 [7, 8]. The question, however, whether it was essential to an injured employee's recovery under the FELA that the jury find certain facts (in addition to those hypothesized) conceivably calls for a determination of what substantive facts the Act requires to exist before an employee may recover. If so, it seems that such a question may have been a federal question of substance. On the other hand, such a contention may really involve only a question of a state court's procedural requirements as to the form of an instruction. The United States Supreme Court has recognized the difficulty in formulating a rule whereby "substance" and "procedure" may be distinguished. In Brown v. Western Railway of Alabama, 338 U.S. 294, 296, 70 S.Ct. 105, 106, 94 L.Ed. 100, 102, the Court said: "The argument is that while state courts are without power to detract from 'substantive rights' granted by Congress in FELA cases, they are free to follow their own rules of 'prac-

tice' and 'procedure.' To what extent rules of practice and procedure may themselves dig into 'substantive rights' is a troublesome question at best as is shown in the very case on which respondent relies. Central Vermont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas. 1916B, 252, 9 N.C.C.A. 265. Other cases in this Court point up the impossibility of laying down a precise rule to distinguish 'substance' from 'procedure.'" See also Annotation in 96 L.Ed. 408, "Local law and practice as applicable to actions under Federal Employers' Liability Act—Supreme Court cases." While recognizing, therefore, that each question must be treated separately in considering whether it is one of substance (Annotation, supra, 96 L.Ed. 412–417, §§ 4–9), the United States Supreme Court has been careful to see to it that an employee's substantive rights were not impaired under the label of "procedure." Brown v. Western Ry. of Alabama, supra, 338 U.S. 296, 70 S.Ct. 106, 94 L.Ed. 102; Atlantic Coast Line R. Co. v. Burnette, 239 U.S. 199, 201, 36 S.Ct. 75, 60 L.Ed. 226, 227; Lee v. Central of Georgia Ry. Co., 252 U.S. 109, 110, 40 S.Ct. 254, 64 L.Ed. 482, 484; and Arnold v. Panhandle & S. F. Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 841, 1 L.Ed.2d 889, at 891, wherein the Court said in that FELA case: "The petitioner having asserted federal rights governed by federal law, it is our duty under the Act to make certain that they are fully protected, as the `Congress intended them to be. We therefore cannot accept interpretations that nullify their effectiveness for ' * * * the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.'"

We have found no case wherein the United States Supreme Court has specifically determined the question as to whether a contention like that of the railroad in instant case as to instruction 1 involves a federal right under the Federal Act. Under the circumstances, however, we are not prepared to say with confi-

dence that a federal question of substance was not involved. We hold, therefore, that the writer of the Rogers opinion intended to and did finally dispose of that question, even though it had not been considered or passed on by the Missouri Supreme Court.

It is otherwise, however, as to the question of excessiveness. We do not find that the United States Supreme Court has specifically held that the question of excessiveness of verdict and judgment rendered and entered in an action brought under the FELA does or does not involve a federal question of substance. Probably the reason for the absence of any such specific determination is the fact that the United States Supreme Court has consistently held that both as to cases reaching it from the federal courts as well as cases from state courts, excessiveness was a matter for the courts below and not open for reconsideration by the United States Supreme Court. See St. Louis, Iron Mountain & S. Ry. Co. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (Error to the Supreme Court of Arkansas and an FELA case), and Southern Ry.—Carolina Division v. Bennett, 233 U.S. 80, 34 S.Ct. 566, 58 L.Ed. 860 (Error to the Supreme Court of South Carolina and an FELA case), where, at 233 U.S. 87, 34 S.Ct. 567, the Court said: "But a case of mere excess upon the evidence is a matter to be dealt with by the trial court. It does not present a question for re-examination here upon a writ of error." See also, Louisville & N. R. Co. v. Holloway, 246 U.S. 525, 529, 38 S.Ct. 379, 62 L.Ed. 867, 870 (Error to the Court of Appeals of Kentucky and an FELA case). True, the United States Supreme Court in Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683, said: "We agree with the Court of Appeals that the amount of damages awarded by the District Court's judgment is not monstrous in the circumstances of this case." 339 U.S. 101, 70 S.Ct. 511. That language, however, may not reasonably be construed as deciding or indicating that the question of excessiveness only, unaffected by other matters, is for review, even in cases reaching the Supreme Court from a lower federal court.

■ Inasmuch as in the FELA cases in which the question has arisen, the Supreme Court of the United States has consistently refused to pass on the question of excessiveness (albeit that the same rule applies in cases from federal and state courts), and inasmuch as the Missouri Supreme Court has specifically held that the question of an excessive verdict under the FELA is a procedural question governed by the law of Missouri, Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 453 [8], 189 S.W.2d 568, 576 [25–27], 161 A.L.R. 383, we are of the opinion that the question of excessiveness of verdict was a nonfederal question and one, therefore, to be decisively determined by the Supreme Court of Missouri.

It follows, therefore, that the opinion of the United States Supreme Court to the effect that the question relating to the claimed excessive verdict in the Rogers case was unsubstantial was a ruling that a nonfederal question not passed on by the Missouri Supreme Court was an unsubstantial question and, therefore, such ruling, at most, was advisory and could not, and does not, preclude this Court from reviewing the excessiveness question without violating the mandate's order to take "proceedings not inconsistent with" the Supreme Court's opinion in Rogers v. Missouri Pacific, supra.

We turn, therefore, to a consideration of whether the verdict and judgment were excessive.

Plaintiff's main injury which he claimed as a result of the accident in question, was a ruptured and prolapsed intervertebral disk with resulting disability. Defendant admits that plaintiff had a disk injury at trial time but adduced evidence from which a jury reasonably could have found that

that disk injury was caused by either or both of two prior accidents, one occurring very shortly before the instant accident and the other some three or four years prior thereto. One of the reasons defendant urges in support of his contention that the verdict and judgment are excessive is that (defendant claims) plaintiff adduced insufficient evidence from which a jury reasonably could have found that the disk injury from which plaintiff was suffering at trial time was caused by the accident of July 17, 1951. It is true, as defendant contends, that the questions to and answers of plaintiff's medical witness on which plaintiff relies do not amount to clear and definite evidence of causal connection and perhaps, as defendant also contends, the testimony in question amounts to nothing more than the doctor's opinion that the July 17, 1951, accident *could* have caused the disk injury from which plaintiff suffered at trial time, and was insufficient, standing alone, to amount to evidence of causal connection. Defendant cites those cases of which Kimmie v. Terminal R. Ass'n, 334 Mo. 596, 605, 66 S.W.2d 561, 565, is typical, and which hold that testimony that a condition might or could have been caused by a certain trauma or by a certain accident, is not, standing alone, sufficient evidence of causal connection. What defendant overlooks, however, is that plaintiff's own testimony in the instant case, together with the medical testimony, furnished substantial evidence from which a jury reasonably could have inferred and found that the July 17th accident caused the disk injury from which plaintiff suffered at trial time.

Plaintiff's testimony was clear and positive to the effect that whatever injuries he sustained in the two prior accidents were of a temporary nature, that he had fully recovered from each, and his description of his activity subsequent to each of those injuries, and particularly his violent physical activity immediately before the instant accident (pitching a baseball game) together

with his testimony of the immediate effect of the July 17th fall upon his then "100%" good (he said) physical condition and the continuous effect thereafter, together with the medical testimony as to the usual effects of a disk injury and the evidence that plaintiff's symptoms manifested those effects, was sufficient evidence from which laymen could find a causal connection between the July 17th fall and the disk injury. And that is true even though there may have been medical testimony that sometimes a disk injury could occur and the evidence thereof not manifest itself for some time thereafter. The present is not a case in which a jury could find causal connection based only upon an expert's opinion, such as was true in Walker v. St. Louis Public Service Co., 362 Mo. 648, 243 S.W.2d 92, 96 [2]. Rather this is the type of case in which there were other facts which, together with the medical testimony, constituted sufficient evidence from which the jury reasonably could have found the necessary causal connection. See Ketcham v. Thomas, Mo., 283 S.W.2d 642, 648–650.

Plaintiff, 24 years of age, was on July 17, 1951, a member of a work crew engaged in burning weeds on defendant's right of way. He fell near a culvert which ran across defendant's roadbed. Plaintiff testified that immediately thereafter he had difficulty in breathing and talking, was numb and dazed for a time, and then experienced intense pain; that after temporary treatment he was hospitalized in the Missouri Pacific Hospital at Little Rock, Arkansas. Plaintiff was there on six different occasions between July 17, 1951, and August 1, 1952, for periods of 29 days, 11 days, 13 days, 8 days, 9 days, and 10 days. Upon arrival at the hospital the first time plaintiff was suffering from pain in his shoulder, neck, and right hip, which latter pain radiated down the back of his right leg. During the total of his 80 days' hospitalization, plaintiff was bedfast a large part of that time and, for 64 of those 80 days, was in traction at all times during day and night,

except when he ate his meals which he would do by turning from his back onto his side. The traction apparatus included leg and neck halters, causing pull on both legs, neck, and spine. During the intervals between hospitalizations, plaintiff was at home and, at least part of the time, confined to bed; in fact, plaintiff testified that to trial time he had spent at least one half the time in bed. In the fall of 1951 his treating physician at the hospital prescribed a brace which he obtained and had worn continuously during each day. He had slept, and at trial time was sleeping, on a bed with boards under the mattress.

Plaintiff testified that he had had a continuous gnawing pain in his back; that at times his movements were extremely limited; that sometimes he could get out of bed and dress himself and, at others, he could do neither without assistance; that he had difficulty in bending forward and could not pick up things from the floor by bending forward. He testified further that he had been unable to do any manual labor which required any great strength since the accident; that he had driven a tractor and plowed for short periods, had assisted in conducting some logging business, and had been hunting and fishing. He also said, however that after he did any of the foregoing things he had each time increased pain in, and trouble with, his back. For six months following the accident, he suffered pain in one of his shoulders and in his neck, and has suffered and continues to suffer pain in his back, right hip joint, and down the back of his right leg.

Dr. Harell, an orthopedic surgeon, made several examinations of plaintiff. Essentially he found that plaintiff walked guardedly, held his right shoulder lower than his left, and, as a result of the tilting of plaintiff's pelvis, his right hip area was more prominent than the left. There was a slight curvature of plaintiff's spine toward the left; plaintiff could accomplish only one half of normal forward bending, and that, with his spine held in a fairly rigid position; that plaintiff experienced pain on sideward and backward bending, and the latter was limited. Plaintiff could raise his right leg only one half as high as normal on the straight leg-raising test and his right ankle reflex was decreased. There was an area around the right ankle and a small area in the right foot extending from the ankle toward the great toe where sensation to pin prick was less than in any other area of his body.

As a result of his five examinations, Dr. Harell concluded that plaintiff had a rupture and prolapse of the intervertebral disk between the fifth lumbar and the first sacral vertebrae, with injury to the surrounding muscles, and that he had a congenital deformity called a "sacralization" of the fifth lumbar vertebra which made the intervertebral disk at that point less susceptible to injury than in a normal spine. The congenital deformity caused no particular symptoms by itself. Dr. Harell confirmed his diagnosis of a ruptured disk by means of a myelogram which is a painful process performed in the hospital. It was Dr. Harell's opinion that plaintiff would suffer from recurrent attacks of pain at various intervals and for varying lengths of time throughout the remainder of his life and that he was permanently and totally disabled from sustained active work; that the brace, which is a canvas affair seven or eight inches wide with metal stays and which fits around his body, is a proper appliance for him to continue to wear in an attempt to immobilize his back; that while plaintiff is not disabled from all gainful employment, if he was trained for heavy labor, he would be, as a result of his injury, "essentially finished"; and that there were very few jobs this man "would be hired on and could do."

Dr. O'Reilly, who examined plaintiff on behalf of defendant, was of the opinion that plaintiff also had suffered an irritation of the sciatic nerve on the right side.

Defendant's witness, Dr. Rowen, one of the attending physicians at the Missouri Pacific Hospital, said that plaintiff could not earn his livelihood as a section laborer

and that while he could earn a living in other work, he was handicapped by his lack of education. Dr. Rowen also said that the majority of persons with prolapsed disks do not need surgery.

At the time of his instant injury, plaintiff had worked for the railroad only a few months and was earning $215 per month. He had had one pay raise. During the three months immediately preceding trial, he had engaged others to drive his truck and operate his chainsaw to carry on a logging business from which he had made a total of $350–$400 net and that was the only sum he had earned from that operation since the accident. Plaintiff owned a small farm, apparently rented to a tenant, and his income from it in a good year was $500. Plaintiff's loss of earnings to trial time, based upon the rate of pay he was receiving at the time of the accident, was approximately $8,000. He adduced no evidence of any medical, surgical, or hospital expenses.

We have considered the cases cited by the parties in support of their respective contentions that the verdict and judgment are and are not excessive. We think the cases of Hayes v. Wabash Railroad Co., 360 Mo. 1223, 233 S.W.2d 12, wherein this Court affirmed a judgment in the sum of $37,500 in 1950, and Pinter v. Gulf, M. & O. R. Co., 362 Mo. 887, 245 S.W.2d 88, wherein this Court affirmed a judgment for $40,000 in January 1952, are particularly applicable. The injuries in those two cases, like the one in instant case, were herniated disks.

Hayes was 38 years of age at the time of his accident, earning about $2,000 a year but working at a job which, if he worked full time, would pay him more than $4,000 a year. He was hospitalized three times for a total of 59 days. His herniated disk was, like plaintiff's in the instant case, between the fifth lumbar and the first sacral vertebrae. It caused him to suffer pain and resulted in his being permanently disabled from performing any manual labor.

The trial court reduced the jury's verdict from $55,000 to $45,000 and this Court further reduced the trial court's judgment to $37,500.

In the Pinter case, plaintiff was 41 years of age and earning $3,000 a year when injured. He made six trips to the Missouri Pacific Hospital in St. Louis and underwent an unsuccessful operation. He wore a sacroiliac girdle. He would continue to suffer pain and was disabled from performing manual labor requiring the use of his back or feet for any long period of time. Plaintiff in that case had a back injury, probably a herniated disk between the fifth lumbar and the sacrum. There, a verdict for plaintiff for $45,000 was reduced by the trial court to $40,000 and affirmed by this Court as not excessive.

In the instant case, the trial court overruled defendant's motion for new trial wherein the contention was made that the verdict of the jury was excessive. The evidence, considered most favorably from plaintiff's standpoint, was such that the jury reasonably could have found, as could the trial court on review, that plaintiff, who, by education and experience, could accomplish only manual labor, would be forever unable to perform sustained manual labor and would continue in the future to lose wages he otherwise could have earned. Plaintiff was a young man and he normally could have anticipated a long period of active physical labor. Under those circumstances, and in the light of the Hayes and Pinter cases, supra, we are of the opinion that the verdict and judgment are not excessive. It follows that the judgment of the trial court is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.